**STATE BANK OF KENMARE, a North Dakota Corporation, Plaintiff and Appellee,**

v.

**Layne A. LINDBERG and Barbara J. Lindberg, Defendants and Appellants.**

Civ. No. 900411.

Supreme Court of North Dakota.

June 3, 1991.

Barbara J. Lindberg, pro se.

Albert A. Wolf of Wheeler Wolf, Bismarck, for plaintiff and appellee; appearance by Gerry Gunderson.

VANDE WALLE, Justice.

Layne Lindberg and Barbara Lindberg appealed from an order and judgment entered in the district court for Burke County granting the State Bank of Kenmare summary judgment on a counterclaim filed by the Lindbergs. We affirm.

The original action and counterclaim stem from a loan of $204,448.73 made by the Bank to the Lindbergs in April 1985. To secure the loan, the Lindbergs gave the Bank a mortgage on farm land they were purchasing and a mortgage on an oil well known as Kok 1–13, as well as an assignment of production payments from the well. The Lindbergs executed a note promising to make monthly payments of $4,000 to the Bank until the loan was paid in full. The Lindbergs made payments pursuant to the note through March 1986, after which no further payments were made.

In November 1986, the Bank initiated a foreclosure action. The Lindbergs responded by answering the complaint and by filing a counterclaim which was subsequently amended. The amended counterclaim included allegations of fraudulent misrepresentation, breach of an obligation of good faith, and interference with contractual rights. The foreclosure action, which has previously been before this Court,[1] and the counterclaim were bifurcated. In November 1990, the trial court, after having previously denied the Bank's motion to dismiss the counterclaim and its motion for summary judgment on the counterclaim, granted the Bank's renewed motion for summary judgment on the counterclaim. The Lindbergs moved the trial court to reconsider its order for summary judgment but the motion was denied.

The Lindbergs contend on appeal that there was sufficient evidence presented to the trial court to preclude summary judgment. In particular, the Lindbergs contend that there was sufficient evidence regarding: failed promises to loan additional money or to renegotiate the terms of the original loan, the Bank's misappropriation of funds, and the Bank's interference with the contractual relationship between the Lindbergs and the oil well lessors, Robert and Nita Kok.

Throughout their appellate brief, the Lindbergs make vague allegations of lack of good faith and "breachment of a fiduciary." The allegation that the Bank breached an obligation to act in good faith was not raised specifically as an issue on appeal, nor was it developed sufficiently enough for this Court to determine its merit.[2] The allegation that the Bank's actions amounted to a "breachment of a fiduciary" was raised as an issue but is without merit. The relationship between a bank and its customers does not ordinarily impose a fiduciary duty upon a bank. *Union State Bank v. Woell,* 434 N.W.2d 712 (N.D.1989). The record reveals that the Lindbergs were experienced business people and sought to deal with the Bank at arms-length. No factual basis exists to raise an inference that the exercise of domination, control or influence required to establish a fiduciary relationship were present in this case.

On appeal from a summary judgment we must determine whether or not the information available to the trial court, when viewed in a light most favorable to the opposing party, precludes the existence of a genuine issue of material fact and entitles the moving party to summary judgment as a matter of law. *Delzer v. United Bank of Bismarck,* 459 N.W.2d 752 (N.D.1990). Summary judgment is appropriate where the law is such that resolution of the factual disputes will not change the result. *Production Credit Ass'n of Fargo v. Ista,* 451 N.W.2d 118 (N.D.1990).

---

**1.** *See State Bank of Kenmare v. Lindberg,* 434 N.W.2d 347 (N.D.1989); *State Bank of Kenmare v. Lindberg,* 436 N.W.2d 12 (N.D.1989).

**2.** This Court has not yet recognized a tort action for breach of the obligation of good faith in a commercial setting. *See Union State Bank v. Woell,* 434 N.W.2d 712 (N.D.1989). The unsupported allegations in this case do not provide the proper context in which to discuss the issue.

The Lindbergs' main contentions on appeal arise from their allegations that the Bank promised to restructure the April 1985 loan in the event they experienced financial difficulty, and their allegation that the Bank promised to loan additional funds at a future date for drilling of a second well. The Lindbergs assert that the Bank made at least three separate oral promises to provide future financial assistance. The first alleged promise, made just prior to the signing of the promissory note for the April 1985 loan, was that the Bank would "adjust" the loan accordingly to accommodate the Lindbergs should they encounter financial difficulty. The second alleged promise, made at the same time, was that the Bank would at a later date advance funds necessary to drill a second well. The third alleged promise, made in March 1987 by an attorney for the Bank, was that the Bank had decided "to release the funds in which to drill the [second] well." These allegations require that we consider whether the Lindbergs can establish that the Bank's alleged oral promises were enforceable.

We have examined the issue of enforceability of alleged oral promises made by a lender to provide future financial assistance in two recent cases. In *Union State Bank v. Woell*, 434 N.W.2d 712 (N.D.1989), we affirmed a judgment dismissing a counterclaim for damages allegedly resulting from a bank's failure to honor an oral agreement " 'to continue loaning money to Woell up to the extent of the Bank's lending limit and then to put Woell into contact with other lending sources beyond the Bank's lending limits.' " *Supra* at 717. We noted that "[e]ssential terms of an oral contract to continue lending money in the future include the amount and duration of the loans, interest rates, and, where appropriate, the methods of repayment and collateral for the loans, if any. [Citations omitted.] Taken alone, the absence of any one of these terms may not be of great significance; however, viewed collectively, their absence is fatal to the existence of a binding contract." *Id.* We determined in *Woell* that there existed no reasonable inference that the parties agreed on any specific terms to continue financing and thus concluded that the alleged oral agreements failed for lack of certainty of the contract's terms.

In *Delzer v. United Bank of Bismarck*, 459 N.W.2d 752 (N.D.1990), we reached a different conclusion as we reversed a trial court's decision to grant a summary judgment to the lender on Ray and Betty Delzer's suit for damages arising out of an alleged oral agreement to provide additional financing. The Delzers alleged that the lender had orally agreed to provide a $300,000 line of credit to finance their farming operation but had provided them with only a $150,000 farm line. The lender's refusal to loan any more money under the alleged line-of-credit agreement rendered the Delzers unable to service their debt load.

We determined in *Delzer* that the terms of the alleged line-of-credit agreement were sufficiently certain to meet the *Woell* requirements. Significantly, the lender's comments, which were in the record, indicated that the lender contemplated the $300,000 line of credit. The $150,000 line-of-credit agreement specifically referred to proceeds from the sale of livestock which both parties agreed could not be purchased without additional moneys from the alleged oral agreements. While it was impossible to prove a specific amount of money to be loaned in the future, there was a reasonable inference, which could be gleaned from evidence of the alleged $300,000 credit agreement and a cash flow projection submitted by the Delzers to the lender, that an additional $150,000 line of credit may have been agreed upon to purchase livestock. Comments made by the lender created a reasonable inference that the additional line of credit was intended to be over a five-year period and there was some evidence of a proposed repayment schedule. Finally, a specific interest rate could have been reasonably inferred from the lender's prevailing rate in the farm and ranch sector.

Here, viewing the evidence in a light most favorable to the Lindbergs, there is no reasonable inference of an enforceable agreement to provide future fi-

nancial assistance. The Lindbergs have produced no evidence of the amount or duration of these alleged loans, nor of the method of repayment. While, as in *Delzer*, we might infer an interest rate from the prevailing rate for like operations if such a rate exists, we have no evidence from which to infer the other essential terms. While the lack of one term may not be of great significance, the collective absence of essential terms "is fatal to the existence of a binding contract." *Woell, supra* at 717.

▇ Nevertheless, the Lindbergs assert that the Bank's promise to loan money at a future date or to restructure the current loan amounted to "deceit through fraudulent representations." The Lindbergs appellate brief does not make clear whether this action was brought in tort or in contract. In *Olson v. Fraase*, 421 N.W.2d 820 (N.D.1988), this Court noted that a contract action for fraud brought under section 9–03–08, NDCC, applied only to misrepresentations between parties to a contract, while a tort action for deceit applied where there was no contract between the parties. *See also Hellman v. Thiele*, 413 N.W.2d 321 (N.D.1987). In this case, however, the Lindbergs apparently are not seeking damages under the contract, but rather are seeking damages for injuries allegedly caused by extra-contractual statements made by the lender, which induced the Lindbergs to alter their position to their detriment. Such an action sounds in tort and is appropriately analyzed under our deceit statutes found in Chapter 9–10, NDCC.

▇ Section 9–10–03, NDCC, provides that one who willfully deceives another with the intent to induce him to alter his position is liable for damages from the resultant injuries. A promise made without any intention of performing is a deceit within the meaning of section 9–10–03. *See* NDCC § 9–10–02. The Lindbergs allege that the Bank had no intention of

"adjusting" their loan nor of loaning additional funds when these promises were first made. The Lindbergs, however, have pointed to no facts or circumstances from which one could reasonably infer deceit on the part of the Bank.

The sum of the allegations is that the Bank made certain promises to induce the Lindbergs into signing the promissory note for the first loan and then failed to honor its promises. The Lindbergs apparently contend that the Bank's continued negotiations over a two-year period for additional funding evidenced its original intention not to perform on its promises. We refuse to recognize that the failure of a bank to make a loan after negotiations creates an inference that the bank originally promised to make a loan. If any inference could be drawn from such negotiations it is that the Bank originally hoped to provide future financial assistance but was unable to do so when the course of events rendered the drilling loan economically unfeasible.

▇ Furthermore, fraud must be proven by clear and convincing evidence. *D. G. Porter, Inc. v. Fridley*, 373 N.W.2d 917 (N.D.1985); *Benefiet v. Hoiby*, 370 N.W.2d 513 (N.D.1985). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court, in applying Rule 56(c) of the Federal Rules of Civil Procedure, concluded that a higher burden of proof should have a corresponding effect on the judge when deciding whether to send the case to the jury.[3] Therefore, when determining if a genuine factual issue as to fraud exists, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability. In ruling on a motion for summary judgment, "the judge must view the evidence presented through the prism of the substantive evidentiary burden." 477 U.S. at 254, 106 S.Ct. at 2513. "[T]here is no genuine issue if the evidence presented in the opposition affidavits is of insufficient caliber or quantity to allow a rational

---

**3.** In *Farmers Union Oil Co. of Williston v. Harp*, 462 N.W.2d 152 (N.D.1990), this Court acknowledged *Anderson* for the principle that a trial court must consider the substantive evidentiary standard of proof while ruling on a motion for summary judgment. Our analysis in *Harp*, a negligence action, was not affected by that principle because there was no heightened standard of proof.

finder of fact to find [fraud] by clear and convincing evidence." *Id.*

Because the Lindbergs have offered no clear and convincing evidence of willful deception such that a jury applying that evidentiary standard could reasonably find for either the Lindbergs or the Bank, the trial court did not err in granting summary judgment on the cause of action for deceit.

■ The next issue to be considered is the assertion that the Bank misappropriated funds. The Lindbergs contend that the Bank misappropriated $8,000 in oil proceeds by applying it to "another account" rather than to the debt incurred in April 1985, thus causing a "default position of these funds."

The April 1985 loan of $204,448.73 was secured in part by a mortgage, signed on May 15, 1985, of the interest of the Lindbergs in the oil and gas lease, the well and equipment, and "all rights incident thereto." That same day, Layne Lindberg executed an agreement assigning the oil production payment from Kok 1–3 to the Bank. The assignment was to continue until the April 1985 loan was paid in full. The amount received each month under the assignment in excess of $4,000 was to be deposited in the Lindbergs account with the Bank. The Lindbergs apparently contend that certain moneys received from the production payment were inappropriately applied to a debt of $10,020.73 subsequently incurred rather than the debt incurred in April 1985 as per the assignment agreement.

Initially, we note that there are facial difficulties with the Lindbergs' claim. First, the allegations are so nebulous that it is uncertain whether the purpose for their inclusion is to lend support to a claim for breach of contract, breach of an obligation of good faith, or a defense for default on the April 1985 loan. Second, although the allegations were raised in their original counterclaim, they were not raised in their amended counterclaim. In *Dahl v. Winter–Truesdell–Diercks*, 243 N.W. 812, 813 (N.D.1932), this Court held that an amended pleading "which is complete in itself and does not refer to, or adopt, the prior pleading, supersedes it, and the original pleading ceases to be a part of the record, being in effect abandoned, or withdrawn...." Although *Dahl* was decided well before the adoption of our current Civil Rules of Procedure, the holding expressed therein is consistent with current thought under modern pleading. *See generally* Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1476. Despite the facial problems of the claim, we have reviewed the record and find no reasonable inference of wrongdoing by the Bank in its allocation of the assignment of production payment.

The assignment of production payment was executed in consideration for the April 1985 loan. The oil mortgage, given as security for that loan, reserved the right of the mortgagee to make additional loans pursuant to section 6–03–05.1, NDCC, which provides, in part:

"Additional optional loans and advances. Any banking association or other mortgagee may advance funds or make additional optional loans to borrowers, from time to time, secured by real estate on which the mortgagee has a mortgage lien, with or without changing the terms of the mortgage, and may carry the optional advances or loans upon its books as assets of the mortgagee, if the mortgage by its terms reserves into the mortgagee the right to make the optional advances or additional optional loans. The optional advances or loans shall be deemed to be merged, incorporated in, and become a part of and secured by the mortgage, and the mortgagee, to secure the optional advances or loans, must retain a lien against the real estate of the same status and priority as the existing mortgage."

In January 1986, the Bank made such an additional loan of $10,020.73 for the purchase of oil well equipment. Under section 6–03–05.1, NDCC, this second loan merged, and became a part of, the mortgage which gave the Bank an interest in the oil well. That mortgage, as previously noted, granted to the Bank "all rights incident" to the oil lease, well and equipment. One such

right incident to the oil lease was the right to production payments which Layne Lindberg granted to the Bank on the same day as the mortgage for the oil lease was executed. Because the second loan merged with the mortgage which granted the Bank the rights incident to the well, the Bank could apply the proceeds it obtained under the assignment to the debt incurred under the second loan.

The final issue raised by the Lindbergs is that of contractual interference. The Lindbergs assert that the Bank interfered with the lease between themselves and the Koks, owners of the land which was being drilled. The Lindbergs contend that the Bank contacted Dave Olson, an agent of a company called Turtle Mountain Gas and Oil, who, while allegedly acting as a representative of the Bank, contacted the Koks and apparently convinced them to terminate their lease with the Lindbergs.

The Lindbergs have offered no support for their allegation of contractual interference. Both Robert and Nita Kok, in depositions taken in this action, deny that they were contacted by Olson for this purpose. The Koks stated, rather, that they terminated the lease as a result of the financial difficulties of the Lindbergs. Because the Lindbergs have offered no evidence to support their allegation, we cannot say that the trial court erred in granting summary judgment on this issue.

The Lindbergs have raised numerous other unsupported allegations on this appeal. As a general rule, conclusory allegations are not sufficient to preclude summary judgment. *See Gress v. Kocourek,* 427 N.W.2d 815 (N.D.1988); *Federal Land Bank of St. Paul v. Asbridge,* 414 N.W.2d 596 (N.D.1987); *Federal Land Bank of Saint Paul v. Anderson,* 401 N.W.2d 709 (N.D.1987). Neither the trial court nor this Court is under any obligation or duty to search the record for evidence opposing the motion for summary judgment. *First American Bank & Trust of Minot v. Elsberry,* 448 N.W.2d 184 (N.D.1989). These principles are equally applicable to parties represented by counsel and those acting pro se, such as the Lind-

bergs. *See Production Credit Association of Mandan v. Obrigewitch,* 443 N.W.2d 304, 307 (N.D.1989) ["Rules cannot be applied differently merely because a party not learned in the law is acting pro se."].

The summary judgment granted by the trial court is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.