2001 ND 197

**SECURITY STATE BANK OF NORTH DAKOTA, Plaintiff and Appellant,**

v.

**Bonnie ORVIK, Defendant and Appellee.**

**No. 20010064.**

Supreme Court of North Dakota.

Dec. 10, 2001.

Troy J. Eickhoff (argued) and Richard P. Olson, Olson Burns Lee, Minot, for plaintiff and appellant.

Charles D. Orvik, (argued) and Galen J. Mack, Mack Law Offices, PC, Rugby, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Security State Bank ("the Bank") appealed a judgment granting Bonnie Orvik priority over the Bank in 1997 crop proceeds from land she leased to David and Sharon Cherney. We hold N.D.C.C. § 47–16–03 does not apply to Orvik's cash rent lease to give her priority in the 1997 crop proceeds. We reverse and remand for proceedings consistent with this opinion.

I

[¶ 2] In April 1994, Orvik leased farmland to Cherneys for five years. The "FARM LEASE–CASH RENT" agreement required Cherneys to pay Orvik cash rent in the amount of $15,134 before April 1 of each year and $15,134 before November 1 of each year. The lease gave Orvik "a lien against all crops (growing and harvested), crop proceeds and products ... until such time as [each year's] final annual cash rent payment" was made. Orvik did not file the lease in the register of deeds' office. The Bank loaned money to Cherneys, and in July 1997, it filed a crop mortgage on Cherneys' 1997 crop. Cherneys harvested the 1997 crop, but their farming operation experienced financial difficulties, and they defaulted on approxi-mately $100,000 of their obligation to the Bank and $20,968 of their 1997 rent payment to Orvik. In January 1998, Orvik filed a Uniform Commercial Code financing statement, claiming an interest in the Cherneys' 1997 crop proceeds.

[¶ 3] The Bank brought this action against several parties who had leased farmland to Cherneys, including Orvik, to determine competing claims to the Cherneys' 1997 crop proceeds. The Bank's action against all the other parties, except Orvik, was ultimately dismissed. In its claim against Orvik, the Bank alleged its recorded interest in the 1997 crop proceeds had priority over her interest in the crops. Orvik counterclaimed against the Bank, claiming she was entitled to a portion of the 1997 crop proceeds sufficient to pay the balance due on the Cherneys' 1997 cash rent payment to her.

[¶ 4] In September 1998, the trial court granted Orvik partial summary judgment, ruling N.D.C.C. § 47–16–03 applied to all farm leases reserving an interest in crops and Orvik had priority over the Bank's interest in the 1997 crops up to the amount of rent due to her from Cherneys. After a September 2000 evidentiary hearing, the trial court ruled Orvik was entitled to $20,968, plus interest, from the 1997 crop proceeds. On March 8, 2001, the Bank appealed from the "Order Granting Summary Judgment dated September 17, 1998; and the Judgment, entered on January 8, 2001."

II

[¶ 5] Orvik argues the Bank's appeal is not timely because it was not filed within sixty days of service of the notice of entry of the September 1998 summary judgment.

[¶ 6] The trial court said the September 1998 order granting Orvik partial

summary judgment did not dispose of the entire action and was not intended to be final. The partial summary judgment was a nonappealable interlocutory order. *See Van Valkenburg v. Paracelsus Healthcare Corp.,* 2000 ND 38, ¶ 8, fn. 1, 606 N.W.2d 908. Nonappealable interlocutory orders are reviewable in an appeal from a final judgment. *See Brunsoman v. Scarlett,* 465 N.W.2d 162, 164 (N.D.1991). The Bank's appeal from the subsequent final judgment is timely, and the September 1998 order granting Orvik partial summary judgment is reviewable in the appeal from the final judgment. We therefore deny Orvik's request to dismiss the Bank's appeal.

## III

[¶ 7] The substantive issue raised in this appeal involves the interpretation of N.D.C.C. § 47–16–03, which provides:

> When a lease of a farm contains a provision reserving title in the lessor to any part of the crops in excess of the rental share of the lessor until the stated conditions of the lease have been complied with by the lessee, such lease must be filed in the office of the recorder in the county in which the land described therein is located prior to July first in the year in which the crops are raised to render such reservation of title effective as to subsequent purchasers or encumbrancers of any part of the grain over and above the lessor's rental share produced upon the land. The failure to file such lease or contract in accordance with this section constitutes a waiver by the lessor of all rights reserved by that person over and above that person's rental share in such crops as against any subsequent purchaser or encumbrancer of the lessee.

[¶ 8] The Bank argues N.D.C.C. § 47–16–03 applies only to crop-share agreements and does not give Orvik priority in the 1997 crop proceeds because the statute only gives a landlord an automatic lien in crops up to the rental share of a crop-share agreement. The Bank argues the "rental share" of Orvik's cash rent lease was zero, and her claim to the 1997 crop proceeds was in excess of that rental share and required her to file the lease before July 1, 1997, to take priority over the Bank's crop mortgage. Orvik argues N.D.C.C. § 47–16–03 applies to any lease that reserves an interest in the tenant's crops, and the reservation can be in a cash-rent lease, a crop-share lease, or a combination of those leases. Orvik argues she has priority over the Bank's subsequent crop mortgage because she claims a lien in the 1997 crop proceeds only up to the balance due on the 1997 rent.

[¶ 9] The interpretation of a statute is a question of law. *E.g., Buchholz v. City of Oriska,* 2000 ND 115, ¶ 2, 611 N.W.2d 886. The primary purpose of statutory construction is to ascertain legislative intent. *E.g., Douville v. Pembina County Water Res. Dist.,* 2000 ND 124, ¶ 9, 612 N.W.2d 270. In ascertaining legislative intent, we look first at the words used in the statute, and we give those words their plain, ordinary, and commonly understood meaning unless they are defined by statute. N.D.C.C. § 1–02–02; *Kim–Go v. J.P. Furlong Enters., Inc.,* 460 N.W.2d 694, 696 (N.D.1990). When a statute is clear and unambiguous on its face, we will not disregard the letter of the statute under the pretext of pursuing its spirit, because legislative intent is presumed clear from the face of the statute. N.D.C.C. § 1–02–05; *Douville,* at ¶ 9. A statute is ambiguous when it is susceptible to differing, but rational, meanings. *Buchholz,* at ¶ 2. In determining the legislative intent for an ambiguous statute, a court may consider the object sought to be at-

tained, the circumstances under which the statute was enacted, the legislative history, the common law or former statutory provisions, the consequences of a particular construction, the administrative construction, and the preamble. N.D.C.C. § 1–02–39.

[¶ 10] Section 47–16–03 N.D.C.C. says if "a lease of a farm contains a provision reserving title in the lessor to any part of the crops in excess of the rental share of the lessor until the stated conditions of the lease have complied with by the lessee," the lease must be filed before July 1 of the crop year for the reservation to be effective against subsequent purchasers or encumbrancers of any part of the grain over and above the lessor's rental share produced upon the land. Section 47–16–03, N.D.C.C., goes on to state the lessor's failure to file the lease is a waiver of the lessor's reserved rights over and above the lessor's rental share in such crops against any subsequent purchaser or encumbrancer of the lessee. Section 47–16–03, N.D.C.C., arguably could be construed to apply to any lease "reserving title in the lessor to any part [of the tenant's] crops." However, the language reserving title to any part of the crops is modified by language requiring the reservation to be "in excess of the rental share of the lessor," rather than in excess of the rent. The use of the term "rental share" in conjunction with the reservation of any part of the crops arguably suggests the statute applies only to crop-share agreements. The arguments by Orvik and the Bank represent different, but rational, meanings for N.D.C.C. § 47–16–03. The scope of the statute is not clear, and we conclude it is ambiguous.

[¶ 11] Before the predecessor to N.D.C.C. § 47–16–03 was enacted in 1941, each party to a crop-share agreement had title to their share of the crop, and a lessor

was not required to file the agreement to protect the lessor against subsequent purchasers or encumbrancers. *See Kern v. Kelner*, 75 N.D. 292, 308, 27 N.W.2d 567, 575 (1947) (on petition for rehearing); *Merchants' State Bank v. Sawyer Farmers' Co-op. Ass'n*, 47 N.D. 375, 385, 182 N.W. 263, 267 (1921). In 1941, the Legislature enacted 1941 N.D. Sess. Laws ch. 5, § 1, which was recodified and revised[1] as 1943 N.D.R.C. § 47–1603, to provide:

> When a lease of a farm contains a provision reserving title to all or any part of the crops in the lessor until the conditions of the lease have been complied with by the lessee and a division of the crop is made, such lease must be filed in the office of the register of deeds in the county in which the land described therein is located prior to July first in the year in which the crops are raised to render such reservation of title effective as to subsequent purchasers or encumbrancers of the lessee of the grain raised upon such land. The failure to file such lease or contract in accordance with the requirements of this section shall constitute a waiver by the lessor of all rights reserved by him in such crops as against any subsequent purchaser or encumbrancer of the lessee.

[¶ 12] In *In re Wild*, 795 F.2d 666 (8th Cir.1986), the court considered an issue about priorities under this statutory language. In *Wild*, at 667, the landlords' 1984 farm lease reserved to them one-third of any crops grown on the land and directed the tenant to deliver the landlords' share of the crops to a grain elevator. The landlords did not record the 1984 lease. *Id.* When the tenant filed for bankruptcy, the trustee, as a hypothetical lien creditor, took possession of the 1984 crops and claimed an interest in the crops supe-

---

1. *See* 1939 N.D. Sess. Laws ch. 110.

rior to the landlords' interest. *Id.* The appellate court, in a divided decision, held the statute applied to the landlords' lease, and the bankruptcy trustee's interest in the crops was superior to the landlords' unrecorded interest in the crops. *Id.* at 668. The court said that in enacting N.D.C.C. § 47–16–03

> "the legislature recognized that theretofore [the lessor's] reservation of title was valid as against the world. Thereafter, when the law became operative, the lessor to protect himself against subsequent purchasers or encumbrancers in good faith, would be required to have his contract on file. However, as between the parties the right of reservation of title in the lessor still remained good without filing."

*Wild,* at 668 (quoting *Kern,* 75 N.D. at 308, 27 N.W.2d at 575).

[¶ 13] Thereafter, in 1987 the Legislature amended N.D.C.C. § 47–16–03 to apply the filing requirement to a farm lease reserving title in the lessor to any part of the crops in "excess of the rental share of the lessor." Compliance with this filing requirement makes the lessor's reservation of title effective against purchasers or encumbrancers of any part of the grain "over and above the lessor's rental share produced upon the land," while non-compliance results in a waiver of all rights reserved by the lessor over and above the lessor's rental share in the crops as against any subsequent purchaser or encumbrancer of the lessee. *See* 1987 N.D. Sess. Laws ch. 552, § 1. The relevant legislative history reflects the 1987 amendments were precipitated by the court's decision in *Wild. See Hearing on H.B. 1468 Before Senate Agricultural Comm.,* 50th N.D. Legis. Sess. (Mar. 13, 1987) (testimony of Representative Robert Nowatzki). The legislative history explains the 1987 amendments were intended "to protect

landowners' share in crops under cases of crop-share rental agreements." *Id. See also Hearing on H.B. 1468 Before the House Agricultural Comm.,* 50th N.D. Legis. Sess. (Feb. 13, 1987) (testimony of Representative Robert Nowatzki). The relevant legislative history indicates the 1987 Legislature intended that N.D.C.C. § 47–16–03 applies only to crop-share agreements. The effect of the amendment was to protect a landlord with an unrecorded crop-share agreement against subsequent encumbrancers up to the landlord's share of the crops, and in order for the landlord to be protected against subsequent purchasers or encumbrancers for any "rental share" in excess of the landlord's crop share, such as advances made by the landlord to or on behalf of the tenant, the landlord must file the lease before July 1 of the crop year.

[¶ 14] We construe N.D.C.C. § 47–16–03 consistent with the legislative intent that it applies only to crop-share agreements and not to cash rent leases. Although Orvik's lease gave her a "lien" against Cherneys' crops until each year's final cash rent payment was made, the lease required Cherneys to pay Orvik cash rent in the amount of $15,134 before April 1 and $15,134 before November 1. The lease did not require rental payments based on a share of the crops and was not a crop-share agreement. We therefore hold the trial court erred in concluding N.D.C.C. § 47–16–03 applied to Orvik's cash rent lease to give her priority over the Bank's interest in the 1997 crop proceeds.

## IV

[¶ 15] We reverse and remand for proceedings consistent with this opinion.

[¶ 16] WILLIAM W. McLEES, D.J., DALE V. SANDSTROM, CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

[¶ 17]  The Honorable WILLIAM W. McLEES, D.J., sitting in place of NEUMANN, J., disqualified.