2003 ND 164

**Dean WANGLER, Plaintiff and Appellant,**

v.

**Ron LEROL and Farmers Union Mutual Insurance Company, Defendants and Appellees.**

No. 20030066.

Supreme Court of North Dakota.

Nov. 13, 2003.

Bryan L. Van Grinsven (argued) and Jennifer Neigum–Stanley (appeared), appearing under the Rule on the Limited Practice of Law by Law Students, McGee, Hankla, Backes & Dobrovolny, Minot, N.D., for plaintiff and appellant.

E. Thomas Conmy III (argued) and Mark R. Hanson (on brief), Nilles, Hansen & Davies, Ltd., Fargo, N.D. for defendant and appellee Ron Lerol.

Carlton J. Hunke (argued) and Leah Marie Warner (on brief), Fargo, N.D., for defendant and appellee Farmers Union Mutual Insurance Company.

SANDSTROM, Justice.

[¶ 1] Dean Richard Wangler appealed from a judgment awarding him $2,531.77 plus costs and disbursements from Ronald Orvin Lerol, but dismissing the remaining claims against Lerol and Farmers Union Mutual Insurance Company in his action arising out of an injury Wangler suffered during the course of his employment at Pine Ridge Company. We conclude the district court did not err in granting summary judgment dismissing Wangler's claim that Lerol and Farmers Union are equitably estopped from denying insurance coverage under the circumstances, and we affirm that part of the judgment. We further conclude the court erred in ruling Wangler's *Miller–Shugart* settlement agreement with the alleged tortfeasor, Pine Ridge, released Pine Ridge from any liability for Wangler's personal injuries, thus making an assignment of its negligence claim against Lerol and Farmers Union ineffective. We reverse the judgment insofar as it dismisses Wangler's

negligence claim against Lerol and Farmers Union, and we remand for further proceedings.

## I

[¶ 2] Wangler was employed by Pine Ridge, a corporation engaged in turkey farming, located near Rugby and partially owned by T.M. Snortland. The turkey farm was located on land owned by Snortland and his sister, Laura Fairfield. Lerol is an insurance agent who sold Farmers Union insurance policies to Pine Ridge, Snortland, and Fairfield.

[¶ 3] On August 5, 1998, Wangler was injured while working at Pine Ridge. In July 1999, Wangler brought a negligence action against Pine Ridge, which did not carry workers compensation insurance. Pine Ridge submitted a claim through Lerol to Farmers Union, and Farmers Union assumed the defense of Pine Ridge under a reservation of rights in a farm liability policy that had been purchased through Lerol. Although the farm liability policy included coverage for employee liability claims, only Snortland and Fairfield were named insureds, and not Pine Ridge. After determining that Pine Ridge was not covered under an additional farmowners property policy or a farm umbrella policy issued through Lerol, Farmers Union withdrew its defense of Pine Ridge in Wangler's action.

· [¶ 4] After Farmers Union denied coverage, Pine Ridge sued Lerol and Farmers Union in October 1999 to recover damages it may have to pay as a result of Wangler's personal injury action. Pine Ridge claimed Lerol negligently failed to procure employee liability insurance for Pine Ridge and claimed Farmers Union was vicariously liable for the acts and omissions of its insurance agent, Lerol, under principles of respondeat superior.

[¶ 5] In March 2000, Wangler and Pine Ridge entered into a *Miller–Shugart* settlement agreement. In *McPhee v. Tufty*, 2001 ND 51, ¶ 10 n. 1, 623 N.W.2d 390, we explained a *Miller–Shugart* agreement:

> Under *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982), an insured defendant may settle a plaintiff's claims and stipulate judgment may be collected only from the proceeds of an insurance policy. *See Medd v. Fonder*, 543 N.W.2d 483, 485 (N.D.1996). The stipulated judgment is not conclusive on the insurer, and the plaintiff judgment creditor has the burden of showing the settlement was reasonable and prudent. *See Rebel v. Nodak Mut. Ins. Co.*, 1998 ND 194, ¶ 5 n. 1, 585 N.W.2d 811.

[¶ 6] The agreement here provided that Pine Ridge "stipulates to a judgment against it, and in favor of [Wangler], in the amount of $200,000.00"; Wangler "will in no way seek to collect this judgment from [Pine Ridge]"; the "judgment is explicitly not satisfiable by attachment nor shall it become a lien upon any of the assets of [Pine Ridge]"; Wangler "will only seek to satisfy this judgment from Farmers Union"; and "[i]f called upon by [Pine Ridge], [Wangler] will cause to be delivered a release or Quit Claim Deed or other document as to the property of [Pine Ridge] affected by the judgment, with the sole exception of liability which may be found to attach to the policy of insurance issued by Farmers Union." Pine Ridge agreed to "assign[] to [Wangler] its rights to pursue insurance coverage from Farmers Union ... for the judgment either by garnishment, declaratory judgment action, or otherwise." · In a separate document, Pine Ridge also assigned to Wangler "all of its right, title, interest, claim, and demand" in its negligence action against Lerol and Farmers Union.

[¶ 7] In August 2001, the district court granted partial summary judgment in favor of Lerol and Farmers Union. The court ruled the *Miller–Shugart* agreement had released Pine Ridge from any monetary liability for Wangler's bodily injuries, resulting in a lack of necessary damages from Lerol's alleged errors and omissions in failing to procure insurance coverage to support the negligence action. The court also ruled, because Lerol could not be liable, Farmers Union could not be liable under a respondeat superior theory. The court concluded, however, that Wangler could recover the costs and expenses Pine Ridge incurred in defending his lawsuit. The court also allowed Wangler to be substituted as a party in Pine Ridge's action against Lerol and Farmers Union, and permitted Wangler to amend the complaint to allege Farmers Union was estopped from denying that it had issued an insurance policy to Pine Ridge providing coverage for Wangler's injuries because Lerol had represented to Pine Ridge that it had employee liability coverage.

[¶ 8] In January 2003, the district court granted summary judgment dismissing Wangler's remaining claim that Farmers Union was estopped from denying insurance coverage in this case. The court ruled "as a matter of law the statements made in this case are insufficient to create coverage which otherwise did not exist." The court awarded Wangler $2,531.77 plus costs and disbursements against Lerol for the costs and expenses incurred by Pine Ridge in defending Wangler's personal injury action, and dismissed the remainder of the claims.

[¶ 9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Wangler's appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const.

art. VI, § 2, and N.D.C.C. §§ 27–02–04 and 28–27–01.

## II

[¶ 10] Summary judgment is a procedure for the prompt and expeditious disposition of a controversy without trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes would not alter the result. *Grinnell Mut. Reinsurance Co. v. Center Mut. Ins. Co.*, 2003 ND 50, ¶ 9, 658 N.W.2d 363. On appeal, we review the evidence in the light most favorable to the party opposing the summary judgment motion. *Ramey v. Twin Butte Sch. Dist.*, 2003 ND 87, ¶ 7, 662 N.W.2d 270. Factual issues become appropriate for summary judgment when reasonable minds can draw but one conclusion from the evidence. *Jones v. Barnett*, 2000 ND 207, ¶ 4, 619 N.W.2d 490.

### A

[¶ 11] Wangler does not claim any of the Farmers Union insurance policies as written provide coverage for his injuries. Rather, Wangler argues Pine Ridge has an employee liability insurance contract with Farmers Union based on representations made by its agent, Lerol. Wangler argues the district court improperly granted summary judgment dismissing his claim that Farmers Union is estopped from denying coverage under the circumstances.

[¶ 12] This Court has said the doctrines of waiver and estoppel will not operate to create an insurance contract that never existed. *See National Farmers Union Prop. & Cas. Co. v. Michaelson*, 110 N.W.2d 431, 438–39 (N.D.1961); *Conklin v. North Am. Life & Cas. Co.*, 88 N.W.2d 825, 831 (N.D.1958). This is the majority rule. *See Annot., Doctrine of estoppel or*

*waiver as available to bring within coverage of insurance policy risks not covered by its terms or expressly excluded therefrom,* 1 A.L.R.3d 1139, 1144 (1965). Other courts have recognized exceptions to the rule, and Wangler relies on an exception requiring that he prove "(1) 'a misrepresentation as to the fact or extent of coverage, innocent or otherwise, by the insurer or its agent, and (2) reasonable reliance by the insured thereon to his ultimate detriment.'" *Countryside Oil Co., Inc. v. Travelers Ins. Co.,* 928 F.Supp. 474, 481 (D.N.J.1995) (quoting *Martinez v. John Hancock Mut. Life Ins. Co.,* 145 N.J.Super. 301, 367 A.2d 904, 911 (Ct.App.Div. 1976)). Even if we were to recognize this exception to the general rule, we agree with the district court that Wangler has failed to raise a genuine issue of material fact to support his claim.

[¶ 13] Wangler relies on an affidavit of Snortland, one of the owners of Pine Ridge, who said it was "my understanding that Pine Ridge employees were covered under the liability policy as well as the umbrella policy in place." Snortland stated:

> Mr. Lerol conducted an annual review of insurance policies with me. During those reviews we discussed my personal insurance as well as business coverage, including Pine Ridge. On each occasion, I asked Mr. Lerol, "Now, we're covered aren't we?" At no time did he indicate that there was no liability insurance coverage for Pine Ridge. Relying on Mr. Lerol's representations, no separate liability coverage was secured for Pine Ridge nor was workers compensation coverage reinstated.

[¶ 14] Wangler relies on several cases from other jurisdictions to support his estoppel argument. However, the facts in those cases are markedly different from the facts related in Snortland's affidavit.

As the district court noted, all of the cases Wangler relies upon involved situations in which the misrepresentations were in the form of a definite statement or act indicating that a particular insurance policy provided a specific type of coverage. *See, e.g., Ivey v. United Nat'l Indem. Co.,* 259 F.2d 205, 209 (9th Cir.1958) (evidence created issue of estoppel where agent told insured his duck hunting business was covered by comprehensive personal liability policy); *Golden Gate Motor Transp. Co. v. Great Am. Indem. Co.,* 6 Cal.2d 439, 58 P.2d 374, 378 (1936) (estoppel where insured requested specific insurance coverage for a specific vehicle); *Kramer v. United Servs. Auto. Ass'n,* 436 So.2d 935, 937 (Fla.App. 1983) (complaint stated cause of action for estoppel where insurer informed insured her new car was covered for 30 days); *Peninsular Life Ins. Co. v. Wade,* 425 So.2d 1181, 1183 (Fla.App.1983) (estoppel was established where agent told insured that policy would pay full benefits from date of issuance); *Harr v. Allstate Ins. Co.,* 54 N.J. 287, 255 A.2d 208, 219–20 (1969) (prima facie case of estoppel was established where insured asked agent to cover business merchandise stored in basement and agent advised insured it was fully covered); *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 67 Or.App. 623, 679 P.2d 879, 882 (1984) (estoppel where insured's son reasonably relied on agent's representation that his auto was covered); *State Auto. Cas. Underwriters v. Ruotsalainen,* 81 S.D. 472, 136 N.W.2d 884, 887 (1965) (estoppel where agent assured insured that policy covered liability arising out of use of towed tool trailer); *Farmers Mut. Auto. Ins. Co. v. Bechard,* 80 S.D. 237, 122 N.W.2d 86, 93 (1963) (estoppel was established where agent represented to insured that he was covered regardless of what he was driving or what kind of work he was doing); *Dodge v. Aetna Cas. & Sur. Co.,* 127 Vt. 409, 250 A.2d 742, 744

(1969) (estoppel was established where insured informed agent he was enlarging his business and asked agent for all insurance necessary for the business); *Marlin v. Wetzel County Bd. of Educ.*, 212 W.Va. 215, 569 S.E.2d 462, 473 (2002) (estoppel was established where agent prepared certificate of insurance naming Board as additional insured).

■ [¶ 15] Snortland's ambiguous question to Lerol after their annual insurance reviews, "Now, we're covered aren't we?", is distinguishable from the specific questions and assurances present in these cases. Snortland does not explain in his affidavit exactly what Lerol said to him in response to his question, and does not describe any definite statement or act by Lerol or Farmers Union that would lead Snortland to believe Pine Ridge had employee liability coverage. Viewed in the light most favorable to Wangler, this evidence does not suggest that Lerol engaged in any affirmative action to lead Snortland to an incorrect belief about insurance coverage.

[¶ 16] We conclude the district court did not err in granting summary judgment dismissing Wangler's claim that there is insurance by estoppel in this case.

**B**

[¶ 17] Wangler argues the district court erred in dismissing his negligence claim against Lerol and Farmers Union. In explaining the dismissal, the court said:

> The Miller–Shugart agreement had released Pine Ridge from any monetary liability for Wangler's bodily injury. Since Pine Ridge could not incur any damages for Wangler's bodily injury based on Lerol's alleged errors and omissions in failing to procure coverage, it no longer had that claim against Lerol. Since Lerol could not be liable, Farmers was no longer responsible on a

theory of respondeat superior for Lerol's failure to procure coverage.

The district court's reasoning is similar to the analysis used by some courts in determining whether a *Miller–Shugart*-type settlement, consisting of a stipulated judgment, covenant not to execute, and assignment of claims, is enforceable against an insurer.

[¶ 18] The approach courts have taken on this issue was summarized in *Freeman v. Schmidt Real Estate & Ins., Inc.*, 755 F.2d 135 (8th Cir.1985). In *Freeman*, the insured, Catron, was involved in a vehicle collision with Freeman, and when Freeman sued Catron, Catron's insurance company paid its vehicle liability limits of $50,000 to Freeman. Catron claimed his insurance agent had agreed to obtain a $300,000 automobile policy covering all of Catron's vehicles. Freeman and Catron settled, with Catron confessing judgment for $350,000 and costs, Freeman agreeing not to execute on any amount of the judgment in excess of $50,000, and Catron assigning his cause of action against the insurance agency for failing to obtain the $300,000 policy. Freeman, as assignee, then sued the insurance agency and the insurer, alleging they were negligent and breached an oral contract in failing to obtain the additional $300,000 insurance policy. The magistrate dismissed the action, concluding, because Catron did not become legally obligated to pay by virtue of the covenant not to execute, he would have been entitled to nothing under the policy, and, consequently, Catron suffered no damages. The magistrate concluded Freeman received no enforceable rights from Catron under the assignment.

[¶ 19] The U.S. Court of Appeals for the Eighth Circuit, in a two-to-one decision resolving an open question under Iowa law, summarized the state of the law on

whether an insurer may be liable to an injured party when the insured is protected by an agreement not to execute on the judgment:

First, under the typical liability insurance policy, an insurer must reimburse the insured only as to amounts which the insured "shall become legally obligated to pay as damages." A covenant not to execute, some courts hold, is merely a contract, and not a release, such that the underlying tort liability remains and a breach of contract action lies if the injured party seeks to collect his judgment. Thus, the tortfeasor is still "legally obligated" to the injured party, and the insurer still must make good on its contractual promise to pay. *State Farm Mutual Automobile Insurance Co. v. Paynter,* 122 Ariz. 198, 593 P.2d 948, 953 (Ct.App.1979); *Globe Indemnity Co. v. Blomfield,* 115 Ariz. 5, 562 P.2d 1372, 1375 (Ct.App.1977); cf. *Critz v. Farmers Insurance Group,* 230 Cal.App.2d 788, 41 Cal.Rptr. 401, 410 (1964) (agreement holding tortfeasor harmless as to judgment in excess of his insurance coverage doesn't foreclose suit against insurer for bad-faith failure to settle). An uninsured party would then be injured by the agent's negligence in failing to procure a policy because he would have the outstanding "liability" against which he sought to insure.

The policy rationale used by other states reaching the result urged by Freeman focuses primarily on the right of the insured to protect himself from bad faith conduct of his insurer. For example, the Nebraska Supreme Court has held that an insured, and thus the insurer, is "legally obligated to pay" within the meaning of the policy despite an agreement not to execute when the insured enters into such an agreement to protect himself from the insurer's denial of coverage and refusal to defend under the policy. *Metcalf v. Hartford Accident & Indemnity Co.,* 176 Neb. 468, 126 N.W.2d 471 (1964). The Nebraska court stressed that the insurer had "repudiated its obligation" to the insured, *id.,* 126 N.W.2d at 476, and some element of misconduct by the insurer generally has been present in the cases in which courts have followed *Metcalf. E.g., American Family Mutual Insurance Co. v. Kivela,* 408 N.E.2d 805, 813 (Ind.Ct.App.1980) (insurer "abandoned" insured when it refused to defend on the ground that the policy had been revoked for false statements on the application); *Griggs v. Bertram,* 88 N.J. 347, 443 A.2d 163 (1982) (insurer failed to promptly notify insured that it was denying coverage). Even those courts which base their findings of liability on the distinction between a release and a covenant not to execute acknowledge the policy implications of an opposite conclusion—settlements such as the one here would no longer serve their intended purpose. *E.g., Paynter,* 593 P.2d at 953.

Cases reaching the result urged by the insurers here give the "legally obligated to pay" language the practical construction adopted by the magistrate: An insured protected by a covenant not to execute has no compelling obligation to pay any sum to the injured party; thus, the insurance policy imposes no obligation on the insurer. *Stubblefield v. St. Paul Fire & Marine Insurance Co.,* 267 Or. 397, 517 P.2d 262, 264 (1973) (en banc); *Bendall v. White,* 511 F.Supp. 793, 795 (N.D.Ala.1981); *Huffman v. Peerless Insurance Co.,* 17 N.C.App. 292, 193 S.E.2d 773, 774, *cert. denied,* 283 N.C. 257, 195 S.E.2d 689 (1973). An individual who is uninsured due to an agent's negligence then will have suffered no damages, as he would have had no rights under the policy

anyway. While this interpretation does prevent use of settlements such as that entered into by the parties here, we agree with the magistrate that Iowa public policy does not require a different result in this case.

*Freeman*, 755 F.2d at 137–139 (footnotes omitted). A minority of jurisdictions have followed the rule the Eighth Circuit predicted the Iowa Supreme Court would adopt. *See, e.g., Lida Mfg. Co., Inc. v. United States Fire Ins. Co.*, 116 N.C.App. 592, 448 S.E.2d 854, 857 (1994); *State Farm Fire and Cas. Co. v. Gandy*, 925 S.W.2d 696, 719 (Tex.1996).

[¶ 20] In 1995, the Iowa Supreme Court had the opportunity itself to consider the question. In *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 532–33 (Iowa 1995), the court rejected the *Freeman* court's conclusion and held a covenant not to execute is merely an agreement rather than a release, the underlying tort liability remains, a breach of contract action is available if the injured party seeks to collect the confessed judgment, and the stipulated judgment does not eliminate the fact of damages. Consequently, the court ruled, because there remained outstanding liability against the insured who had confessed judgment in favor of the injured party, there was "potential damage" caused by an insurance agent's failure to procure the correct coverage, and the action against the agent was viable if there was no insurance coverage. *Id.* at 533. The Iowa court thus aligned itself with the vast majority of courts to have considered the question since *Freeman* was decided. *See, e.g., Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128, 1133 (D.C.Cir.1989) (involving assigned action against insurance company); *McLellan v. Atchison Ins. Agency Inc.*, 81 Hawai'i 62, 912 P.2d 559, 564–565 (Ct.App.1996) (involving assigned action against insurance agent); *Guillen ex rel. Guillen v. Potomac Ins. Co.*, 203

Ill.2d 141, 271 Ill.Dec. 350, 785 N.E.2d 1, 13 (2003) (involving assigned action against insurance company); *Campione v. Wilson*, 422 Mass. 185, 661 N.E.2d 658, 663 (1996) (involving assigned action against insurance agent); *Lancaster v. Royal Ins. Co. of America*, 302 Or. 62, 726 P.2d 371, 375 (1986) (involving assigned action against insurance company); *Kobbeman v. Oleson*, 574 N.W.2d 633, 637 (S.D.1998) (involving assigned action against insurance agent); *Tip's Package Store, Inc. v. Commercial Ins. Managers, Inc.*, 86 S.W.3d 543, 555 (Tenn.Ct.App.2001) (involving assigned action against insurance agent); *Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051, 1060–61 (Wyo.2002) (involving assigned action against insurance company). *See also* J. Harris, Note *Judicial Approaches to Stipulated Judgments, Assignments of Rights, and Covenants Not to Execute in Insurance Litigation*, 47 Drake L.Rev. 853, 858 (1999). However, if the insured does execute a full release of liability, the insured has no right to recover against the insurance company that can be assigned to an injured party. *See, e.g., Clock v. Larson*, 564 N.W.2d 436, 438 (Iowa 1997); *Tip's Package Store*, 86 S.W.3d at 555.

[¶ 21] The validity of *Miller–Shugart* agreements has been recognized in North Dakota for more than a decade. *See McPhee v. Tufty*, 2001 ND 51, 623 N.W.2d 390; *Rebel v. Nodak Mut. Ins. Co.*, 1998 ND 194, 585 N.W.2d 811; *Ohio Cas. Ins. Co. v. Horner*, 1998 ND 168, 583 N.W.2d 804; *Fisher v. American Family Mut. Ins. Co.*, 1998 ND 109, 579 N.W.2d 599; *Hanneman v. Continental W. Ins. Co.*, 1998 ND 46, 575 N.W.2d 445; *D.E.M. v. Allickson*, 555 N.W.2d 596 (N.D.1996); *Medd v. Fonder*, 543 N.W.2d 483 (N.D. 1996); *Dundee Mut. Ins. Co. v. Balvitsch*, 540 N.W.2d 609 (N.D.1995); *Sellie v. North Dakota Ins. Guar. Ass'n*, 494 N.W.2d 151 (N.D.1992). In *Miller v. Shu-*

*gart,* 316 N.W.2d 729, 732 (Minn.1982), the Minnesota Supreme Court approved the settlement mainly on policy grounds without specifically addressing whether the agreement extinguished any damages the insured could suffer, even though the court observed the stipulated "judgment effectively liquidates defendants' personal liability." *See* J. Harris, Note, 47 Drake L.Rev. at 858 (noting "most recent decisions concerning the use of this procedure do not even address the question of whether the provider is 'legally obligated to pay' under the terms of its policy"). The Minnesota Court of Appeals has indicated it is an open question whether a stipulated tort judgment eliminates damages and defeats assigned claims. *See Peterson v. Brown,* 457 N.W.2d 745, 748, 750 (Minn.Ct. App.1990). Nevertheless, we believe the Minnesota Supreme Court's approval of *Miller–Shugart* settlements defeats any argument that a stipulated tort judgment accompanied by a covenant not to execute, rather than an actual release of liability, eliminates the fact of damages. A *Miller–Shugart* settlement agreement cannot coexist with a rule declaring an insured incurs no damage from an agreement to confess judgment accompanied by a covenant not to execute and an assignment of claims. If the district court's analysis were accepted, *Miller–Shugart* settlements would be invalid and useless because an abandoned insured would be precluded from settling within policy limits with injured third parties.

■ [¶ 22] The *Miller–Shugart* agreement in this case was not a "release" of Pine Ridge's liability. Wangler only agreed to not seek to collect the stipulated judgment from Pine Ridge. Wangler also agreed that, if requested, he would deliver a "release or Quit Claim Deed" as to Pine Ridge's property "affected by the judgment," but specifically excluded from that promise "liability which may be found to attach to the policy of insurance issued by Farmers Union." The agreement is a contract, rather than a release, the underlying tort liability remains, and a breach of contract action lies in favor of Pine Ridge if Wangler seeks to collect the judgment against its assets. We conclude the agreement did not extinguish Pine Ridge's damages and the district court erred in dismissing Wangler's negligence action on this basis.[1]

[¶ 23] Although the *Miller–Shugart* agreement did not eliminate the fact of damages, the agreement itself is of no relevance to Wangler's negligence action against Lerol. In *St. Michel v. Burns and Wilcox, Ltd.,* 433 N.W.2d 130 (Minn.App. 1988), the Minnesota Court of Appeals ruled a *Miller–Shugart* agreement between the injured plaintiff and an insured could not be enforced against insurance agents. The court noted that in a typical *Miller–Shugart* agreement, the rights and obligations between the insured and insurer are grounded on an insurance policy contract, and reasoned:

We agree with appellants that their situation is different from the circumstances in *Miller.* The agent's situation is not like the existing contractual relationship between an insured and insurer. The insurer's responsibilities under the contract exist at the time the claim arises between the plaintiff and the insured, but the agent's obligation to indemnify . . . arises only after . . . the agent's substitute liability is confirmed

---

1. *Carrier Agency, Inc. v. Top Quality Bldg. Prod., Inc.,* 519 N.E.2d 739 (Ind.App.1988), relied on by Lerol and Farmers Union to support the argument that there are no damages in this case, is unpersuasive under the circumstances, because the case does not involve a *Miller–Shugart* type settlement agreement.

by agreement or litigation. During the interim, there is an inadequate relationship to justify the risk and eventual burden of a settlement.

It is evident that in *Miller* the supreme court undertook a delicate balancing of burdens and risks and resolved them against the interest of an insurer. Different questions are involved in applying the same rule of law to a case which does not involve existing contractual responsibilities between an insured and insurer, and *Miller* does not support this application.

*Id.* at 135. Consequently, the settlement agreement is not probative on the issues of Lerol's fault or Pine Ridge's damages. *See Campione*, 661 N.E.2d at 663. Wangler, as the assignee, will have to prove his negligence action against Lerol in full. *See Kobbeman*, 574 N.W.2d at 636–37.

### C

[¶ 24] Lerol and Farmers Union argue Wangler's respondeat superior claim against Farmers Union is not properly before us because Wangler failed to re-allege it after the trial court dismissed the claim in the August 2001 partial summary judgment and allowed Wangler to amend the complaint.

[¶ 25] Lerol and Farmers Union rely on *State Bank of Kenmare v. Lindberg*, 471 N.W.2d 470, 475 (N.D.1991), in which this Court quoted *Dahl v. Winter–Truesdell–Diercks Co.*, 62 N.D. 351, 355, 243 N.W. 812, 813 (1932), for the general proposition that "an amended pleading, 'which is complete in itself and does not refer to, or adopt, the prior pleading, supersedes it, and the original pleading ceases to be a part of the record, being in effect abandoned, or withdrawn....'" Although in *Lindberg*, at 475, we noted the *Dahl* holding was "consistent with current thought under modern pleading," we nevertheless

reviewed the merits of the appellants' argument contained in their original counterclaim even though it was not raised in their amended counterclaim.

[¶ 26] Many of the federal courts of appeals refuse to require a plaintiff to replead dismissed claims to preserve the right to appeal the dismissal. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572–73 (4th Cir.2001); *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir.2000); *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 n. 5 (11th Cir.1999); *Parrino v. FHP, Inc.*, 146 F.3d 699, 704 (9th Cir.1998); *USS–POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council*, 31 F.3d 800, 811–12 (9th Cir.1994); *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517–18 (10th Cir.1991); *Wilson v. First Houston Inv. Corp.*, 566 F.2d 1235, 1238 (5th Cir.1978), *vacated on other grounds*, 444 U.S. 959, 100 S.Ct. 442, 62 L.Ed.2d 371 (1979); *Blazer v. Black*, 196 F.2d 139, 143–44 (10th Cir.1952) (dicta); *see also* 35A C.J.S. *Federal Civil Procedure* § 445 (2003). These courts have reasoned it is "needlessly formalistic" to require a plaintiff to replead claims already dismissed. *Young*, 238 F.3d at 572; *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1477, at pp. 560–61 (1990) (criticizing the general rule). The "futily exception" to the general rule, *In re Crysen/Montenay Energy Co.*, 226 F.3d at 162, has arisen because, "[b]y dismissing the claims ..., the district court has quite clearly given its view of the viability of the claims, a view not made any clearer or more final by requiring the plaintiff to re-allege the already rejected claims." *Young*, 238 F.3d at 572; *see also Dunn*, 193 F.3d at 1191 n. 5. A "rule requiring plaintiffs who file amended complaints to replead claims previously dismissed on their merits in order to preserve those claims merely sets a trap for unsus-

pecting plaintiffs with no concomitant benefit to the opposing party." *Davis*, 929 F.2d at 1518 (footnote omitted). Courts have also reasoned, "[i]f the plaintiff were required to reallege claims dismissed on summary judgment to avoid waiving them, plaintiff's counsel would be forced to bear the risk of sanctions to preserve his client's right to appeal." *Parrino*, 146 F.3d at 704; *see also USS–POSCO Indus.*, 31 F.3d at 812. One court further reasoned, "such an approach spawns piecemeal appeals." *Wilson*, 566 F.2d at 1238.

■ [¶ 27] We agree with the reasoning of these courts and conclude a plaintiff need not replead dismissed claims in an amended complaint to preserve the right to appeal the dismissal. To the extent *Dahl* is inconsistent with our conclusion, it is expressly overruled. The district court's dismissal of the respondeat superior claim against Farmers Union is properly before this Court. *See Security State Bank v. Orvik*, 2001 ND 197, ¶ 6, 636 N.W.2d 664 (holding nonappealable interlocutory orders, such as partial summary judgments, are reviewable in an appeal from a final judgment).

■ [¶ 28] Generally, entities are liable for torts committed by their agents while acting within the scope of their employment. *Binstock v. Fort Yates Pub. Sch. Dist.*, 463 N.W.2d 837, 841–42 (N.D. 1990). Section 3–03–09, N.D.C.C., provides "a principal is responsible to third persons for the negligence of the principal's agent in the transaction of the business of the agency, including wrongful acts committed by the agent in and as a part of the transaction of the business." We have concluded the district court improperly dismissed Wangler's negligence claim against Lerol. If Lerol is found to be negligent, there could be a basis for imputing Lerol's negligence to Farmers Union. Therefore, we conclude the court erred in dismissing the respondeat superior claim against Farmers Union.

### III

[¶ 29] We affirm the summary judgment dismissing Wangler's claim that Lerol and Farmers Union are equitably estopped from denying insurance coverage. We reverse the summary judgment dismissing Wangler's negligence action against Lerol and Farmers Union and remand for further proceedings.

[¶ 30] WILLIAM A. NEUMANN, WILLIAM J. HODNY, S.J., and MARY MUEHLEN MARING, JJ., concur.

[¶ 31] The Honorable WILLIAM F. HODNY, Surrogate Judge, sitting in place of KAPSNER, J., disqualified.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 32] I authored the opinion in *State Bank of Kenmare v. Lindberg*, 471 N.W.2d 470 (N.D.1991) for the Court. In that case we did review the merits of the argument of the appellants "contained in their original counterclaim even though it was not raised in their amended counterclaim," while citing *Dahl v. Winter–Truesdell–Diercks Co.*, 62 N.D. 351, 243 N.W. 812 (1932) for the proposition ascribed by the majority opinion.

[¶ 33] With one exception I agree with the majority's reliance on the federal cases which refuse to require a plaintiff to replead dismissed claims to preserve the right to appeal the dismissal. My exception concerns whether the defendant understands the plaintiff has not repleaded the dismissed claim solely because it was dismissed and not for other reasons such as a new theory of the cause of action or a concession on the plaintiff's part, that the trial court was legally correct in its rea-

sons for dismissing the claim. While a "rule requiring plaintiffs who file amended complaints to replead claims previously dismissed on their merits in order to preserve those claims merely sets a trap for unsuspecting plaintiffs," *Davis v. TXO Production Corp.*, 929 F.2d 1515, 1518 (10th Cir.1991), so too may the failure to replead the dismissed claim be a trap for unsuspecting defendants who are led to believe the plaintiffs intend to abandon the dismissed claim by their failure to replead. It is not inconceivable that plaintiffs may abandon a dismissed claim because the trial court was obviously correct in dismissing the claim or that the amended pleading frames a new cause of action which is inconsistent with the continued viability of the dismissed claim. The paramount purpose of a complaint is, after all, to inform the defendant of the nature of the claim being asserted against the defendant by the plaintiff. N.D.R.Civ.P. 7; *Vande Hoven v. Vande Hoven,* 399 N.W.2d 855 (N.D.1987).

[¶ 34] There is no assertion here that Lerol and Farmers Union were misled by Wangler's failure to reallege the respondeat superior claim in the amended complaint. It may be that Lerol and Farmers Union were misled by *State Bank of Kenmare's* citation to *Dahl.* However, it is clear both defendants realized we might review the dismissed claim, as we did in *State Bank of Kenmare,* because both defendants briefed the respondeat superior claim on its merits.

[¶ 35] I concur in the result reached by the majority opinion.

[¶ 36] Gerald W. Vande Walle, C.J.