2000 ND 124

Thomas DOUVILLE, remainder interest, and Nettie Douville, life estate; Estate of Howard Hughes and Doreen Hughes, c/o H. Frank Hughes, P.R.; Jeffrey Hughes; Stanley Hughes and Lois Hughes; Albert D. Johnson and Vernon L. Johnson; Gordon E. Kollack and Roy Kollack; Kathleen Kollack; Roy Morris; William J. Newell and Donna C. Newell; Ralph Stegman and Jacqueline Stegman; Perry A. Svenson and Susan J. Svenson; William Symington and Lillian Symington, individually and as trustee of Garnet E. Symington Trust; Vernon Symington and Phyllis Symington;

Walter Symington and Sharon Symington; Randall Wagner and Marion Wagner; Irene Weiss; and Larry R. Trenbeath, Trustee of the Allen Dale Trenbeath Trust, Petitioners and Appellants,

v.

PEMBINA COUNTY WATER RESOURCE DISTRICT, Respondent and Appellee,

and

Tim Wilwand, Richard Margerum, Larry Wilwant, Cameron Wilwand, and Bert Warner, Intervenors and Appellees.

No. 990307.

Supreme Court of North Dakota.

June 14, 2000.

Duane R. Breitling, Ohnstad Twichell, Fargo, for petitioners and appellants.

Neil W. Fleming, Fleming & DuBois, Cavalier, for respondent and appellee.

Kermit E. Bye (argued) and Tami L. Norgard (appearance), Vogel, Weir, Hunke & McCormick, Ltd., Fargo, for intervenors and appellees.

Julie A. Krenz (on brief), Attorney General's Office, Bismarck, for amicus curiae State of North Dakota.

VANDE WALLE, Chief Justice.

[¶ 1] Thomas Douville and numerous other landowners ("the landowners") appealed from a judgment affirming the decision of the Pembina County Water Resource District ("the District") ordering removal of dikes on their land. We affirm.

I

[¶ 2] This case involves a long-standing dispute over dikes built along the Pembina River more than twenty-five years ago. Between 1969 and 1974, several landowners in the Neche area built dikes on their land to control flooding from the Pembina River. The landowners did not seek nor obtain permits or approval to construct the dikes. In years of high run-off, the Neche-area dikes have caused flooding of downstream land.

[¶ 3] In 1996, complaints were filed with the District alleging the landowners' dikes were illegal and should be removed. After lengthy hearings and presentation of extensive documentary evidence, the District

determined the dikes were illegal and ordered them removed. The landowners appealed to the district court, which affirmed the decision of the District.

[¶ 4] In the appeal to this Court, the landowners raise two issues:

Did the Pembina County Water Resource District Board of Managers misinterpret the laws relating to the removal of unauthorized dikes, and thus arbitrarily, capriciously, and unreasonably order the removal of dikes on land owned by the appellants?

Did the Pembina County Water Resource District Board of Managers misapply the law of prescriptive easement so that its order for the removal of dikes on land owned by the appellants was arbitrary, capricious, and unreasonable?

## II

[¶ 5] We recently outlined our standard of review in appeals from a decision of a water resource district:

In an appeal from the decision of a local governing body under N.D.C.C. § 28–34–01, our scope of review is the same as the district court's and is very limited. Our function is to independently determine the propriety of the decision, without according any special deference to the district court's decision, and unless the Board acted arbitrarily, capriciously or unreasonably, or there is not substantial evidence to support the decision, it must be affirmed. A decision is not arbitrary, capricious or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation.

*Graber v. Logan County Water Resource Board*, 1999 ND 168, ¶ 7, 598 N.W.2d 846 (citations omitted). Interpretation of a

statute is a question of law, which is fully reviewable by this Court. *Wanstrom v. North Dakota Workers Compensation Bureau*, 2000 ND 17, ¶ 5, 604 N.W.2d 860.

## III

[¶ 6] The District has the authority under N.D.C.C. § 61–16.1–53 [1] to order removal of unauthorized dikes:

Removal of a noncomplying dike or dam—Notice and hearing—Appeal—Injunction. Upon receipt of a complaint of unauthorized construction of a dike, dam, or other device for water conservation, flood control, regulation, watershed improvement, or storage of water, the water resource board shall promptly investigate and make a determination thereon. If the board determines that a dam or other device, capable of retaining, obstructing, or diverting more than twelve and one-half acre-feet [15418.52 cubic meters] of water, has been established or constructed by a landowner or tenant contrary to the provisions of this title or any rules promulgated by the board, the board shall notify the landowner by registered or certified mail at the landowner's post-office address of record. . . . The notice must specify the nature and extent of the noncompliance and must state that if the dike, dam, or other device is not removed within such period as the board shall determine, but not less than thirty days, the board shall cause the removal of the dike, dam, or other device and assess the cost thereof, or such portion as the board shall determine, against the property of the landowner responsible.

[¶ 7] The parties agree the relevant statutory provision governing the legality of these dikes is N.D.C.C. § 61–16–15 as it existed at the time the dikes were constructed. At all relevant times [2] that statute provided, in part:

---

1. This statute was amended in 1999. *See* 1999 N.D. Sess. Laws ch. 540, § 2.

2. The current provision governing construction of water control devices is codified at N.D.C.C. § 61–16.1–38.

No dams or other devices for water conservation, flood control regulation, watershed improvement or storage of water which are capable of retaining more than twelve and one-half acre-feet of water shall be constructed within any water management district except in accordance with the provisions of this chapter.

The statute required application to, and approval by, the Water Resource Board and the State Water Commission before any such water control device could be built. N.D.C.C. § 61–16–15.

[¶ 8] The landowners concede they never sought a permit or other approval for the dikes in question. They argue, however, that dikes were not covered by N.D.C.C. § 61–16–15 and therefore no such authorization was required. Thus, they assert, the dikes were not illegal when constructed and cannot be ordered removed under N.D.C.C. § 61–16.1–53.

▬ [¶ 9] The landowners specifically contend that, because N.D.C.C. § 61–16–15 mentions dams but not dikes, the legislature did not intend that dikes be covered by the statutory provision. Resolution of this issue requires interpretation of the statutory language. The primary purpose of statutory construction is to ascertain the intent of the legislature. *Ash v. Traynor*, 2000 ND 75, ¶ 6, 609 N.W.2d 96; *Berg v. Berg*, 2000 ND 36, ¶ 24, 606 N.W.2d 895. In ascertaining legislative intent, we look first to the words used in the statute, giving them their plain, ordinary, and commonly understood meaning. *Ash*, at ¶ 6; *Berg*, at ¶ 24. When a statute is clear and unambiguous on its face, we will not disregard the letter of the statute under the pretext of pursuing its spirit, because the legislative intent is presumed clear from the face of the statute. N.D.C.C. § 1–02–05; *Lawrence v. North Dakota Workers Compensation Bureau*, 2000 ND 60, ¶ 19, 608 N.W.2d 254.

▬ [¶ 10] We believe N.D.C.C. § 61–16–15 is clear and unambiguous on its face

and, giving the words of the statute their plain, ordinary, and commonly understood meaning, demonstrates the legislature's intent that dikes are included in the statute's provisions. The statute does not apply only to dams; it also applies to "other devices for . . . flood control regulation." A "dike" is defined as "an embankment or dam made to prevent flooding by the sea or by a river," Webster's New World Dictionary 395 (2d Coll. ed.1982), or "a bank usu. of earth constructed to control or confine water." Webster's Third New International Dictionary 632 (1971). There is no dispute the dikes in this case were constructed for the express purpose of controlling flooding of the landowners' property by the Pembina River. A dike is clearly a "device for . . . flood control regulation."

▬ [¶ 11] The landowners argue the legislative history of a 1979 amendment to N.D.C.C. § 61–16–15 indicates that dikes were not included in the pre–1979 version of the statute. However, when the letter of the law is clear and free of ambiguity, we need look no further than the statutory language, *Hill v. Weber*, 1999 ND 74, ¶ 9, 592 N.W.2d 585, and "it is neither necessary nor appropriate to delve into legislative history to determine legislative intent." *Born v. Mayers*, 514 N.W.2d 687, 689 (N.D.1994).

[¶ 12] If we were to consider the history of the 1979 amendment, it clearly indicates that dikes *were* included in the pre–1979 version of the statute. The 1979 amendment specifically added the word "dike" to the types of devices regulated under the statute. *See* 1979 N.D. Sess. Laws ch. 642, § 1. The landowners argue that, because it is presumed the legislature does not perform idle acts, the addition of the word "dike" must mean dikes were not included prior to the amendment.

▬ [¶ 13] Although generally it is presumed a legislative enactment is intended to change existing law, when analyzing an amendment we must consider whether the

purpose was to clarify or alter the law. *Scott v. North Dakota Workers Compensation Bureau*, 1998 ND 221, ¶ 15, 587 N.W.2d 153; *Effertz v. North Dakota Workers Compensation Bureau*, 525 N.W.2d 691, 693 (N.D.1994). In this case, the legislative history demonstrates the word "dike" was added to merely clarify the law, and was not an indication dikes were not previously covered by the statute.

[¶ 14] The 1979 amendment was drafted by the State Water Commission. In a written summary of the bill presented by Michael Dwyer, counsel for the Water Commission, the purpose of the amendment was explained:

> The word "dike" was inserted in line 12 on page 1 for clarification purposes only. Many individuals, on their first reading of Section 61–16–15, do not understand that dikes are included in the phrase "other devices for water conservation, flood control regulation, watershed improvement or storage of water". An express reference to dikes should prevent future confusion concerning the applicability of Section 61–16–15 to dikes.

[¶ 15] It is hard to imagine a clearer expression that the 1979 amendment was intended to merely clarify existing law. The landowners argue, however, that in his oral testimony before the House Natural Resources Committee Dwyer, responding to a question, indicated dikes which had been previously erected without approval could not be removed. They contend this testimony conflicts with the written explanation of the bill. A careful reading of Dwyer's testimony, however, shows he was merely explaining that the 1979 amendment did not give the State Engineer administrative authority to remove dikes, as a bill proposed in the 1977 Legislative Assembly had.

[¶ 16] The landowners also argue dikes are not within the statute because N.D.C.C. § 61–16–15 applied only to devices or structures capable of "retaining" water. The landowners contend dikes merely divert water, and do not retain water, and thus a dike is not capable of "retaining" water as required by the statute.

[¶ 17] The landowners' suggested interpretation of N.D.C.C. § 61–16–15 is contrary to the plain language of the statute. "Retain" is defined as: "to hold secure or intact (as in a fixed place or condition)," Webster's Third New International Dictionary 1938 (1971); "to keep in a fixed state or condition," Webster's New World Dictionary 1213 (2d Coll. ed.1982); "To keep or hold in a particular place, condition, or position," The American Heritage Dictionary of the English Language 1109 (1973). The very purpose of a dike is to keep or hold water in a particular place or position, i.e., to "retain" it within its banks or channel. Applying the plain, ordinary, and commonly understood meaning of the statutory language, a dike is capable of "retaining" water.

[¶ 18] We conclude it was the legislature's clearly expressed intent that the provisions of N.D.C.C. § 61–16–15 apply to dikes. Accordingly, the District did not err in determining these dikes were unauthorized and subject to removal because the dikes were constructed without proper authorization under N.D.C.C. § 61–16–15.

## IV

[¶ 19] The landowners assert the District erred in refusing to hold they had acquired a prescriptive easement to flood downstream land, and therefore the dikes should not be removed.

[¶ 20] In *Nagel v. Emmons County North Dakota Water Resource District*, 474 N.W.2d 46, 48–50 (N.D.1991), we recognized a landowner could acquire a flowage easement by prescription. *See also Graber v. Logan County Water Resource Board*, 1999 ND 168, ¶ 17, 598 N.W.2d 846. What the landowners seek in this case, however, goes beyond a mere flowage easement upon the land of downstream owners. They assert the right to keep in

place dikes which were erected in violation of state law.

[¶ 21] The question presented in this administrative proceeding was whether the dikes were authorized under N.D.C.C. chs. 61–16 and 61–16.1. The District is authorized to order removal of any dike which "has been established or constructed ... contrary to the provisions of this title or any rules promulgated by the board," irrespective of any private right to flood downstream land. N.D.C.C. § 61–16.1–53. This issue implicates the police powers of the state, and is wholly separate from the competing private rights of upstream and downstream landowners.

[¶ 22] Whether or not the landowners had acquired a prescriptive right vis-a-vis the downstream landowners, they cannot acquire a prescriptive right to prevent the State from exercising its authority to regulate and control the use of public waters for the benefit of the public. *See People v. Shirokow,* 26 Cal.3d 301, 162 Cal.Rptr. 30, 605 P.2d 859, 866 (1980); 4 Herbert T. Tiffany, Law of Real Property § 1192 (3d ed.1975); *cf. Mountrail County v. Hoffman,* 2000 ND 49, ¶ 8, 607 N.W.2d 901 (no lapse of time can legalize a public nuisance amounting to an obstruction of public right); *City of Benton City v. Adrian,* 50 Wash.App. 330, 748 P.2d 679, 683 (1988) (prescriptive right may not be acquired to a public nuisance, including obstructing or encroaching public streets and public ways, or threatening water supply). As the court explained in *Shirokow,* at 866:

> What is being challenged is the state's governmental interest in regulating the use of public waters rather than any proprietary interest in the water claimed by defendant. The stipulated facts do not reveal that the state was using the water; indeed, defendant admits the state, if successful in obtaining the injunction, will not make use of the water. Thus it is undisputed that the state's interest here at stake is nonproprietary.

[¶ 23] The legislature has expressly granted the District the authority to regulate water management, including the construction of dikes, to promote the health, safety, and welfare of the public:

> Legislative intent and purpose. The legislative assembly of North Dakota recognizes and declares that the general welfare and the protection of the lives, health, property, and the rights of all people of this state require that the management, conservation, protection, development, and control of waters in this state, navigable or nonnavigable, surface or subsurface, the control of floods, the prevention of damage to property therefrom, involve and necessitate the exercise of the sovereign powers of this state and are affected with and concern a public purpose. To realize these objectives it is hereby declared to be the policy of the state to provide for the management, conservation, protection, development, and control of water resources and for the prevention of flood damage in the watersheds of this state and thereby to protect and promote the health, safety, and general welfare of the people of this state.
>
> The legislative assembly further recognizes the significant achievements that have been made in the management, conservation, protection, development, and control of our water and related land resources, and declares that the most efficient and economical method of accelerating these achievements is to establish water resource districts encompassing all of the geographic area of the state, and emphasizing hydrologic boundaries.

N.D.C.C. § 61–16.1–01. The landowners cannot defeat the State's authority to protect the health, safety, and welfare of the public by claiming a prescriptive right to maintain dikes which were constructed in violation of state law.

[¶ 24] We conclude the District did not misapply the law of prescriptive easements when it ordered removal of the dikes.

## V

[¶ 25] The judgment affirming the District's decision ordering removal of the dikes is affirmed.

[¶ 26] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., and DONALD L. JORGENSEN, D.J., concur.

[¶ 27] The Honorable DONALD L. JORGENSEN, D. J., sitting in place of KAPSNER, J., disqualified.