Filed 7/26/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 152

John Miller and J.D. Miller Farming Association, Appellants

v.

Walsh County Water Resource District, Appellee

No. 20120018

Appeal from the District Court of Walsh County, Northeast Judicial District, the Honorable M. Richard Geiger, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Sean M. Fredricks (argued) and Christopher M. McShane (on brief), P.O. Box 458, West Fargo, N.D. 58078-0458, P.O. Box 458, West Fargo, N.D. 58078-0458, for appellants.

Cameron D. Sillers, 908 3rd Street, Langdon, N.D. 58249-2413, for appellee.

Miller v. Walsh County Water Resource District

No. 20120018

Kapsner, Justice.

[¶1] John Miller and J.D. Miller Farming Association (collectively “Miller”) appeal from an order affirming the Walsh County Water Resource District’s decision requiring Miller to remove unpermitted dikes from his property located in Forest River Township.  We affirm, concluding Miller has failed to establish that the District acted arbitrarily, capriciously or unreasonably, that there is not substantial evidence to support its decision, or that the District is estopped from requiring removal of the dikes.

I

[¶2] In 1955, approximately two years before the creation of a water resource district in Walsh County and the existence of permit requirements for dike construction, Miller’s father built dikes along the Forest River to protect his farmland from flooding.  In early to mid 1996, Miller repaired and revised the dike system on the property.  Miller’s work on the dikes prompted a complaint from an area resident which was sent to, among others, the State Water Commission, the District and Miller.  The complainant requested in his July 14, 1996, letter that the dike system “be torn down in its entirety . . . because if this dike system is allowed to stand for even one spring, the Forest River Community will forever be impacted.”  On July 18, 1996, a state water resource engineer wrote to the District’s chairman referencing the complaint and stating “[w]e do not have a record of a dike construction permit issued in section 21, Forest River Township.  It appears that a construction permit is required and should have been applied for before construction began.”  At the time, a permit was required if a dike was capable of retaining, obstructing or diverting more than 12 ½ acre-feet of water.  
See
 N.D.C.C. § 61-16.1-38; 1985 N.D. Sess. Laws ch. 669, § 3.  The engineer urged the District to investigate the complaint and informed it that “[a]n engineering analysis is necessary to determine the impact of the unpermitted dike on the city.”  On July 18, 1996, the District’s chairman wrote to Miller advising him to “seize [sic] all work on the dike along the Forest River.”

[¶3] Randy Gjestvang, the Red River Water Resource Engineer, met with Miller and surveyed the property to obtain elevations of the dikes.  In an October 16, 1996, letter to the District’s chairman, Gjestvang revealed the results of his survey and said he found a “new dike.”

Aerial photos and on-site investigations were also used to attempt to determine the extent of any old dikes.  Unfortunately, the old dike was apparently completely removed in some areas.  For those areas, the soil was used for fill for the new dike that was realigned further from the river.  In other areas, soil was placed along the same alignment as the old dike.  The old dike was apparently very narrow, and partially falling into the river in some areas.  According to the landowner, he was mainly attempting to strengthen the dike.  He felt that he had matched the elevation of the old dike.  He also said that the contractor had knocked down the top of the narrow dike, when widening the top of it.  The contractor had also told us that they had made efforts to construct the new dike to the same elevation as the old one.

 

Gjestvang made several suggestions regarding appropriate dike elevations.  The minutes of the District’s October 17, 1996 meeting state:

The Board met with Randy Gjestvang, SWC, and John Miller concerning the dike built around the city of Forest River.  The W.C.W.R.D. and SWC requested Mr. Miller to make some changes to the dike.  Mr. Miller was agreeable and will comply with all proposals.  He said the work should be completed within a week.  Randy Gjestvang will inspect then.

 

[¶4] In a February 11, 1997, letter to the District’s chairman, Gjestvang reported that he had inspected the additional work done to the dikes by Miller and found the work “was completed according to the guidelines provided.”  He further noted “[t]he levees in Section 21 are not considered to be permitted.  They remain with the same status as the majority of the dikes that exist along the Forest River in this area.”  Also on February 11, 1997, the complainant wrote to the District’s chairman stating he had spoken with Gjestvang and “I hereby withdraw my complaint.”  The District took no further action on the matter.

[¶5] During the summer of 2010, Miller repaired part of the dike system that had been breached.  In August 2010, another area landowner filed a dike complaint against Miller with the District.  The landowner claimed Miller’s “unpermitted illegal dike system” was causing excessive river bank erosion and landscape damage to her property during high water events.  After receiving the complaint, Miller had the dikes surveyed to make sure the elevations were the same as the elevations set by Gjestvang in 1996.  In a letter dated November 9, 2010, the District informed Miller:

Upon investigation of the area and consulting with the ND State Water Commission the Walsh County Water Resource District has determined that the dike system has been constructed without obtaining a dike permit from the State.  In 1990’s a State construction permit was required for projects capable of retaining, obstructing or diverting 12 ½ acre-feet of water.  Therefore, the Walsh County Water Resource District Board is ordering that the dike system be removed in its entirety on or before November 30, 2010.  If the dike system is not removed in its entirety by November 30, 2010, the Walsh County Water Resource District will cause the removal of the dike system and assess the cost thereof, or such portion as the Board shall determine, against your property.

 

[¶6] Miller requested a hearing and presented evidence that the current elevations of the dikes were at the same elevations set by Gjestvang in 1996.  Following the hearing, the District convened in a closed executive session with its attorney.  The District ultimately determined Miller’s dike system did not have a permit as required by N.D.C.C. § 61-16.1-38, it was “capable of retaining, obstructing or diverting more than 50 acre-feet of water,” and ordered its removal under N.D.C.C. § 16-16.1-53 no later than September 1, 2011.  The district court affirmed the District’s decision.

II

[¶7] Miller argues the District’s decision requiring him to remove the dikes is arbitrary, capricious and unreasonable.

[¶8] This Court has outlined the limited standard of review applicable to this type of case:

In an appeal from the decision of a local governing body under N.D.C.C. § 28-34-01, our scope of review is the same as the district court’s and is very limited.  Our function is to independently determine the propriety of the decision, without according any special deference to the district court’s decision, and unless the Board acted arbitrarily, capriciously or unreasonably, or there is not substantial evidence to support the decision, it must be affirmed.  A decision is not arbitrary, capricious or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation.

 

Klindt v. Pembina Cnty. Water Res. Bd.
, 2005 ND 106, ¶ 12, 697 N.W.2d 339 (quoting 
Douville v. Pembina Cnty. Water Res. Dist.
, 2000 ND 124, ¶ 5, 612 N.W.2d 270).

A

[¶9] Miller argues the District lacked jurisdiction to order removal of the dikes because they were constructed in 1955 before permitting requirements became effective in Walsh County.

[¶10] We agree with Miller that the legality of dikes is measured by the law in effect at the time the dikes were constructed.  
See
 
Douville
, 2000 ND 124, ¶ 7, 612 N.W.2d 270; 
Matter of Persons
, 334 N.W.2d 471, 474 (N.D. 1983).  However, Miller’s jurisdictional argument appears to be based on the District’s inartfully drawn findings rather than on the overwhelming evidence in the record.

[¶11] The District’s findings note that “[t]he dike was first constructed in 1955” and that in “1996 or 1997, repairs and revisions were made to the dike,” leaving the impression that little was done by Miller to alter the dike system.  Miller argues these findings suggest only the dike built in 1955 is involved in this case.  However, the evidence establishes that Miller in 1996 essentially constructed, in the words of the second complaining landowner, “a double dike system.”  Gjestvang’s 1996 and 1997 correspondence with the District repeatedly refers to the “old” and the “new” dikes located on Miller’s property.  Miller admitted the existence of a dual dike system during the hearing.

Cameron Sillers
—I have a question.  You say, you are referring to this as a repair and I remember looking at these pictures that Miss Carroll [second complainant]—, it looks like there was an old dike in there in the trees and now there’s this dike that runs parallel to the trees.  Is the dike that runs parallel to the trees, is that the one you repaired in 1996?

John Miller, Jr.
—Which one is that?

Cameron Sillers
  Well, I don’t recall the picture, but she referred to some pictures, like where there are 2 dikes.  There’s one that was kind of pushed up in the trees, then there’s this dike that’s kind of, that runs parallel to the trees on the edge of the field where you testified.

John Miller, Jr.
—That’s just where the contractor, for fill to repair.

Cameron Sillers
—So, in other, so he didn’t repair the original dike, he constructed, a, you refer to as a repair, he constructed this dike that runs parallel to the field that was constructed and grass was planted and you mow it and that was sort of thing.

John Miller, Jr.
—Basically on the outside of the original one.

Cameron Sillers
—Yes, and is that what you meant, that in most cases?

John Miller Jr.
  Yup.

Cameron Sillers
—So in some instances there is

John Miller Jr.
—You go right over the top.

Cameron Sillers
—You didn’t go right over the top, you kind of built one beside it

John Miller, Jr.
—Exactly, further away from the river, never on the inside.

 

Photo exhibits also show new dikes parallel to the old dikes.

[¶12] When viewed in the context of Miller’s use of the term “repair,” we conclude the District’s findings refer to the dikes built or “repair[ed]” in 1996, and not the original dikes built in 1955.  The 1996 dike work cannot be “equated with ordinary maintenance or repairs.”  
North Dakota State Eng’r v. Schirado
, 373 N.W.2d 904, 907 (N.D. 1985).  In existence in 1996, N.D.C.C. § 61-16.1-38 provided “[n]o dikes . . . for . . . flood control regulation . . . shall be constructed within any district except in accordance with the provisions of this chapter.”  The District had jurisdiction over the dikes Miller built or “repair[ed]” in 1996.

B

[¶13] Miller argues the District’s decision that the dikes required a permit is arbitrary, capricious and unreasonable because the District incorrectly interpreted and applied N.D.C.C. §§ 61-16.1-38 and 61-16.1-53.

[¶14] Section 61-16.1-38, N.D.C.C., provides in relevant part:

No dikes, dams, or other devices for water conservation, flood control regulation, watershed improvement, or storage of water which are capable of retaining, obstructing, or diverting more than fifty acre-feet [61674.08 cubic meters] of water or twenty-five acre-feet [30837.04 cubic meters] of water for a medium-hazard or high-hazard dam, may be constructed within any district except in accordance with the provisions of this chapter.  An application for the construction of any dike, dam, or other device, along with complete plans and specifications, must be presented first to the state engineer. . . . Any person constructing a dam, dike, or other device, which is capable of retaining, obstructing, or diverting more than fifty acre-feet [61674.08 cubic meters] of water or twenty-five acre-feet [30837.04 cubic meters] of water for a medium-hazard or high-hazard dam, without first securing a permit to do so, as required by this section, is liable for all damages proximately caused by the dam, dike, or other device, and is guilty of a class B misdemeanor.

 

[¶15] Section 61-16.1-53, N.D.C.C., further provides in relevant part:

Upon receipt of a complaint of unauthorized construction of a dike, dam, or other device for . . . flood control, . . . the water resource board shall promptly investigate and make a determination thereon.  If the board determines that a dam or other device, capable of retaining, obstructing, or diverting more than fifty acre-feet [61674.08 cubic meters] of water or twenty-five acre-feet [30837.04 cubic meters] of water for a medium-hazard or high-hazard dam, has been established or constructed by a landowner or tenant contrary to this title or any rules adopted by the board, the board shall notify the landowner by registered mail at the landowner’s post-office address of record. . . .  The notice must specify the nature and extent of the noncompliance and must state that if the dike, dam, or other device is not removed within the period the board determines, but not less than fifteen days, the board shall cause the removal of the dike, dam, or other device and assess the cost of the removal, or the portion the board determines, against the property of the landowner responsible.

 

[¶16] Miller contends the District failed to comply with its duties imposed by these statutes “to determine if the structure in question is a ‘dike, dam, or other device,’” and if so, to “determine if the structure is ‘capable of retaining, obstructing, or diverting’ more than 50 acre-feet of water (low-hazard structures) or 25 acre-feet (for medium or high-hazard structures).”  We reject this argument.  First, a “dam” is defined by N.D. Admin. Code § 89-08-01-01(3) as “any artificial barrier or obstruction, including any appurtenant works, across a stream channel, watercourse, or an area that drains naturally or may impound water,” and a “dike” is defined by N.D. Admin. Code § 89-08-01-01(4) as “an embankment, including appurtenant works, constructed to protect real or personal property.”  The structure in this case is obviously a dike rather than a dam because it is undisputed that the structure does not cross a stream channel or other watercourse.  Second, no analysis of whether the dikes qualified as low-hazard, medium-hazard, or high-hazard was required because the plain language of N.D.C.C. §§ 61-16.1-38 and 61-16.1-53 expressly limits the application of that analysis to dams.  
See also
 N.D. Admin. Code § 89-08-01-01(8) (defining “High-hazard dam”); N.D. Admin. Code § 89-08-01-01(10) (defining “Low-

hazard dam”); N.D. Admin. Code § 89-08-01-01(11) (defining “Medium-hazard dam”).  Miller’s argument is without merit.

[¶17] Miller also argues that the District failed to offer any analysis or rationale for its finding that the dike “is capable of retaining, obstructing or diverting more than 50 acre-feet of water.”  Miller contends the District was required to comply with the mandates for determining the capacity of dams, dikes, or other devices set forth in N.D. Admin. Code § 89-08-02-01, which provides in part:

The diverting capacity of a dike is calculated based upon the area protected as measured from the top of the dike.  If the absence of the dike could result in more than fifty acre-feet of water inundating the protected area, a permit is required.

 

[¶18] We agree with the district court’s analysis of this issue.  The court noted the District “could have provided more detail and analysis to explain this finding,” but concluded there was sufficient evidence in the record to support the finding.  The court explained:

[T]he record supports the finding that the dike system is capable of retaining, obstructing, or diverting more than fifty acre-feet of water.  The dike system’s length is extensive.  A substantial part of it is on both sides of the Forest River as it flows through Section 21.  The acreage to be protected is substantial as is the acreage within which the water is retained.  Given the approximate height of the diking system, and with no evidence to the contrary, this Court is satisfied that the record supports the board’s conclusion that the diking system was capable of retaining, obstructing, or diverting more than fifty acre-feet of water.  This Court is satisfied that the record demonstrates by this analysis that the board went through a rational mental process in reaching this conclusion.

 

[¶19] Moreover, whether the dike was capable of retaining, obstructing or diverting  more than 50 acre-feet of water does not appear to have been a disputed issue during the proceedings, perhaps because the answer to the question was obvious to everyone involved.  Indeed, Miller does not even claim in his briefs on appeal that the dike system is in fact not capable of retaining, obstructing or diverting more than 50 acre-

feet of water, only that the District did not properly analyze this factor.  Furthermore, the District was required to determine that the dikes were capable of retaining, obstructing or diverting only 12 ½ acre-feet of water under the law in effect in 1996.  Miller cannot complain that the District erred in his favor.  
See
 
Welken v. Conley
, 252 N.W.2d 311, 317 (N.D. 1977).  We conclude Miller has failed to establish the District erred in determining a permit was required for the dikes.

C

[¶20] Miller argues the District’s decision to order removal of the dikes is arbitrary, capricious and unreasonable because the District had 15 years earlier “[o]rdered” him to modify the dikes to specific elevations.

[¶21] The record reflects that Miller’s dike work in 1996 spurred the first landowner’s complaint and the District’s order to cease all work on the dikes.  Gjestvang suggested lowering the dikes in certain areas so the new dikes had no greater impact on affected landowners than the old dikes.  Miller agreed to the District’s “request[]” to make the changes, which essentially resulted in a “settlement” of the matter between Miller and the complaining landowner.  In his February 11, 1997, letter to the District, Gjestvang said:

If the Board agrees that the hydraulic conditions are the same as they were previously, they can take the stance that the complaint has been properly addressed.  I talked to Phil Johnston [first complainant] on February 10.  He indicated that he may not be completely satisfied, but felt that as much was corrected as could be expected.  He may prepare a letter requesting that his complaint be withdrawn.

 

The complaint was withdrawn, and the District issued no formal order of any kind on the matter.

[¶22] As the district court reasoned:

The Board’s inaction 15 years ago does not serve as a basis to now conclude that taking action by the [District] now constitutes an arbitrary, capricious and unreasonable act on its part.  A water resource district has the statutory authority to order removal of unauthorized dikes.  NDCC 61-16.1-53.  
Douville v. Pembina County Water Resource District
, 2000 ND 124[,] ¶ 6, 612 NW 2d 270.  Absent evidence of a permit for the additions and repairs and revisions made in 1996 to the Section 21 dike system, those were not authorized in the manner required by law.  The appellant always remained at risk for the filing of a future complaint relating to the dikes in Section 21.

 

[¶23] We conclude the District’s decision is not arbitrary, capricious or unreasonable under these circumstances.

III

[¶24] Miller argues that principles of equitable estoppel, promissory estoppel and waiver preclude the District from now ordering removal of his dikes.

[¶25] The doctrine of equitable estoppel is codified in N.D.C.C. § 31-11-06, which provides:

When a party, by that party’s own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.

 

[¶26] The elements of promissory estoppel are: “‘(1) a promise which the promisor should reasonably expect will cause a change of position by the promisee; (2) a substantial change in the promisee’s position through action or forbearance; (3) justifiable reliance on the promise; and (4) injustice which can only be avoided by enforcing the promise.’”  
Erickson v. Brown
, 2012 ND 43, ¶ 14, 813 N.W.2d 531 (quoting 
Dalan v. Paracelsus Healthcare Corp.
, 2002 ND 46, ¶ 16, 640 N.W.2d 726).

[¶27] We explained the doctrine of waiver in 
First Int’l Bank & Trust v. Peterson
, 2009 ND 207, ¶ 13, 776 N.W.2d 543:

For a waiver to be effective, the waiver must be a voluntary and intentional relinquishment of a known existing advantage, right, privilege, claim, or benefit. The right, claim, privilege, or benefit must be one the party could have enjoyed, but for the waiver.  Once the right is waived, the right or privilege is gone forever and cannot be recalled. A waiver cannot be extracted, recalled or expunged. A waiver can be made expressly or by conduct.

 

(quoting 
Tormaschy v. Tormaschy
, 1997 ND 2, ¶ 19, 559 N.W.2d 813).

[¶28] “Successfully claiming waiver or estoppel against a government entity is not an easy accomplishment.”  
Dan Nelson Constr., Inc. v. Nodland & Dickson
, 2000 ND 61, ¶ 30, 608 N.W.2d 267.  “Estoppel against the government is available in limited circumstances and should be applied ‘on a case-by-case basis with a careful weighing of the inequities that would result if the doctrine is 
not
 applied versus the public interest at stake and the resulting harm to that interest if the doctrine 
is
 applied.’”  
J.P. v. Stark Cnty. Soc. Servs. Bd.
, 2007 ND 140, ¶ 20, 737 N.W.2d 627 (quoting 
Blocker Drilling Canada, Ltd. v. Conrad
, 354 N.W.2d 912, 920 (N.D. 1984)).  Through its enactment of N.D.C.C. ch. 61-16.1, the Legislature has expressed the strong public interest at stake here by declaring that “the general welfare and the protection of the lives, health, property, and the rights of all people of this state require that the management, conservation, protection, development, and control of waters in this state, navigable or nonnavigable, surface or subsurface, the control of floods, the prevention of damage to property therefrom, involve and necessitate the exercise of the sovereign powers of this state.”  N.D.C.C. § 61-16.1-01.

[¶29] We conclude Miller’s claims of estoppel fail in this case because the record indicates not only that he had knowledge a permit likely would be required for the 1996 dike work, but also that he made a conscious decision to forego the permit application process.  During the hearing, Miller stated:

John Miller, Jr.
—Back in the mid 50’s, when my father, and a lot of his construction was done with smaller equipment, um, very shoddy, as far as the design of these dikes, these levees, and a lot of timber in the levees, and throughout the years, the dikes were decaying, they needed a lot of work, 
so in 1996 when I did not request a permit, I regret that, I wish I would have, we basically just reinforced or, um, followed, tried to find, follow the same elevations as what was there
.  And, um, I guess Randy [Gjestvang] came out there, we walked, we walked everything, we, you know, we had the discussion, he explains it very well in the letter that there were places we couldn’t find any vegetation because we clipped off the top and we reinforced the outside, never the inside of the levee, so that’s basically the jest [sic] of it.

 

(Emphasis added).  Additionally, after the complaint was filed in 1996, Miller knew from the correspondence between Gjestvang, the state water resource engineer, and the District, that the dikes were not permitted as required by law.  Because a person asserting equitable or promissory estoppel must show on his own part “lack of knowledge and of the means of knowledge of the truth as to the facts in question,” 
Benson v. SRT Commc’ns, Inc.
, 2012 ND 58, ¶ 27, 813 N.W.2d 552; 
Jamestown Terminal Elevator, Inc. v. Hieb
, 246 N.W.2d 736, 741 (N.D. 1976), Miller cannot establish estoppel against the District.

[¶30] Unlike estoppel, which involves conduct by both parties, “waiver depends upon what one party intended to do, regardless of the other party.”  
Sanders v. Gravel Prods., Inc.
, 2008 ND 161, ¶ 10, 755 N.W.2d 826.  Miller has not shown that the District during the proceedings in 1996 and 1997 intentionally waived its ability to enforce provisions of state law.  The parties at that time were fully aware that Miller’s dikes were not permitted as required by law, but reached a “settlement” that allowed Miller to keep the dikes at lower elevations that matched the elevations of the original dikes built in 1955.  The “settlement” resulted in the landowner withdrawing his complaint and the District failing to take any formal action on the complaint.  We agree with the district court’s observation that “[g]iven the [District’s] statutory responsibilities and obligations, and the policy behind the creation of water districts,” the District’s inaction “may not have been a prudent act.”  But “[m]ere negligence, oversight, or thoughtlessness does not create a waiver.”  28 Am. Jur. 2d 
Estoppel and Waiver
 § 192, at 658 (2011) (footnote omitted), and cases cited therein.  Miller has not pointed to any express or implied actions on the part of the District evidencing an intentional waiver of its ability to enforce state law in the future.  The District’s lengthy tolerance of Miller’s dikes, in the absence of any complaints by landowners, is insufficient to establish an intentional waiver.

[¶31] We conclude principles of estoppel and waiver did not preclude the District from ordering removal of Miller’s dikes.

IV

[¶32] Miller argues the District’s order should be voided under N.D.C.C. § 44-04-

21.2(2) because it violated the open meeting laws by deliberating in a closed executive session.  The District argues the closed executive session was authorized by N.D.C.C. §§ 44-04-19.1 and 44-04-19.2 because it was for the purpose of taking legal advice from its attorney.

[¶33] The district court correctly resolved this issue:

Both counsel serve as officers of the Court.  They have made factual assertions in their briefs.  They are inconsistent with each other.  Given the burden of proof for this claim being on [Miller] and absent other reliable evidence including affidavits to support the assertion that there was a violation of North Dakota’s open meeting law requirements, I conclude that no order should issue voiding the [District’s] action of February 15, 2011.

 

[¶34] Miller has failed to establish that the District violated the open meeting laws.

V

[¶35] We do not address other arguments raised because they are either unnecessary to the decision or are without merit.  The order is affirmed.

[¶36] Carol Ronning Kapsner

Mary Muehlen Maring

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.

Sandstrom, Justice, concurring.

[¶37] I concur in the majority opinion.

[¶38] The majority holds, at ¶ 29:

We conclude Miller’s claims of estoppel fail in this case because the record indicates not only that he had knowledge a permit likely would be required for the 1996 dike work, but also that he made a conscious decision to forego the permit application process.

[¶39] I write separately only to emphasize that if Miller did not know that a permit likely would be required and he had not made a conscious decision to forego the permit application process, the inquiry would not be at an end—additional factors would have to be analyzed.  As this Court explained in 
Blocker Drilling Canada, Ltd. v. Conrad
, 354 N.W.2d 912, 920 (N.D. 1984):

In 
Farmers Cooperative Association of Churchs Ferry v. Cole
, 239 N.W.2d 808, 809 (N.D. 1976), at syllabus 4, we set forth the basic elements of estoppel that must be met as to the person being estopped and as to the person claiming the estoppel.  As to the person being estopped the elements are:  1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; 2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence the other party or persons; and 3) knowledge, actual or constructive, of the real facts.  As to the person claiming estoppel the elements are:  1) lack of knowledge and the means of knowledge of the truth as to the facts in question; 2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and 3) action or inaction based thereon, of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

[¶40] Thus I agree with the majority that the facts set forth in ¶ 29 are sufficient to preclude governmental estoppel, but contrary facts on those points would not be sufficient in themselves to establish governmental estoppel.  “Successfully claiming waiver or estoppel against a government entity is not an easy accomplishment.”  
Dan Nelson Constr., Inc. v. Nodland & Dickson
, 2000 ND 61, ¶ 30, 608 N.W.2d 267.

[¶41] Dale V. Sandstrom

Crothers, Justice, concurring in part and dissenting in part.

[¶42] I agree with the Court’s conclusions that Miller’s water impoundments were dikes under North Dakota law and that the District had jurisdiction over the dikes due to construction or reconstruction in 1996.  
See
 Majority Opinion at ¶¶ 9-19.  I respectfully dissent from the majority’s conclusion the District was not estopped from requiring removal of the dikes in 2011 because the 1996 work ordered by the District and approved by the State Water Commission was done without a permit.  
See
 Majority Opinion at ¶¶ 24-31.

[¶43] A complaint dated July 14, 1996 alleged, “[T]he J.D. Miller Farming Association commenced a diking operation in Section 21, 155, 53, which can do nothing but back up flood water for several miles, totally inundating Forest River in the process.”  The District explained:

“In 1997 [sic], the Walsh County Water Board received a complaint objecting to the dike in Section 21 from Phillips [sic] W. Johnston of Forrest [sic] River, North Dakota.  There was lengthy discussions with the Walsh County Water Board, the State Water Commission and the local farmers concerning the complaint.  A settlement was worked out between the parties whereby the State Water Commission set the level of the dike and the complainant, Phillips [sic] Johnston withdrew his complaint.  The Board never took any formal action on the complaint and the landowners did not obtain a permit for the dike as it was constructed in 1997 [sic].
(footnote: 1)

[¶44] Johnston’s 1996 complaint alleged Miller’s dikes would cause flooding in the town of Forest River.  Johnston complained, “This dike system was constructed with no consideration being given to the safety of the Forest River Community and the surrounding area.”  The 1996 complaint does not allege Miller’s diking work proceeded without a permit.  On July 18, 1996, a water resource engineer with the State Water Commission wrote the District regarding Johnston’s complaint.  That letter raised the need for permits, stating:

“Mr. Johnson [sic] inquired with this office to see if there are any permit(s) issued by this office for dike construction in section 21.  We do not have a record of a dike construction permit issued in section 21, Forest River Township.  It appears that a construction permit is required and should have been applied for before construction began.

“The entire section is also in the 100-year floodplain which will require a floodplain development permit from the Walsh County Auditor.  Additionally, the City of Forest River has the 100-year flood hazard mapped for the city.  The location and alignment of the dike may impact (raise) the 100-year elevations identified for the city.  An engineering analysis is necessary to determine the impact of the unpermitted dike on the city.”

The State Engineer’s letter was sent to the District chairman and copied to an engineer at the State Water Commission.  Miller is not shown as receiving a copy of the letter. In fact, we neither have been shown nor have I found anything establishing that Miller knew in 1996 he needed a permit.  But at the same time, the District, the Office of the State Engineer and the State Water Commission all knew a question existed about the need for a permit. 

[¶45] The need for a permit in 1996 was a substantial basis for the 2011 complaint initiating this proceeding.  The fact that the 2011 complaint was based on the lack of a permit in 1996 makes understandable Miller’s statement during a 2011 District hearing that, “so in 1996 when I did not request a permit, I regret that, I wish I would have, we basically just reinforced or, um, followed, tried to find, follow the same elevations as what was there.”  Majority Opinion at ¶ 29.  Nonetheless, Miller’s regret in 2011 that he had not applied for a permit in 1996 does not answer the question whether the District is now estopped from requiring a permit when it knew in 1996 that Miller needed but did not have one.  The answer to that question comes from the record in 1996 and 1997, and from what the District and Miller said, did and knew then.

[¶46] The contemporaneous record shows the State Water Commission made recommendations in the fall of 1996 to the District for modification of Miller’s dikes.  The District accepted the recommendations and told Miller to make changes to the dikes.  The February 11, 1997 correspondence from the State Water Commission to the District confirms this history, stating:

“In an October 16, 1996 letter to your Board, recommendations were made to lower certain areas of the levees in section 21, Township 155 North, Range 53 West.  At an October 17 meeting, the landowner was told to complete this additional work.”

[¶47] The same correspondence shows the State Water Commission specifically told the District that Miller’s dikes did not have permits.  The letter states, “The levees in Section 21 are not considered to be permitted.  They remain with the same status as the majority of the dikes that exist along the Forest River in this area.”  The letter concludes stating:

“If the Board agrees that the hydraulic conditions are the same as they were previously, they can take the stance that the complaint has been properly addressed.  I talked to Phil Johnston on February 10.  He indicated that he may not be completely satisfied, but felt that as much was corrected as could be expected.  He may prepare a letter requesting that his complaint be withdrawn.”

In fact, Johnston wrote the District on February 11, 1997 to withdraw his complaint.  With this background, the District dismissed the 1996 Johnston complaint.

[¶48] Equitable estoppel is defined by statute:

“When a party, by that party’s own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.”

N.D.C.C. § 31-11-06.  Here, I believe the facts establish the District is estopped from now requiring removal of Miller’s work on the dikes done in 1996 without a permit.  [¶49] The District required Miller to complete work in October 1996 without ever mentioning before the work was completed that a permit was required.  Yet the District was told by the State Engineer in July 1996 that Miller’s work required a permit.  The District’s order to perform diking without first requiring a permit is a “declaration, act, or omission” satisfying the first requirement of N.D.C.C. § 31-11-

06. 

[¶50] Miller performed work on the dikes in 1996 to satisfy the District’s directive.  Miller hired an engineer to verify the work was done according to the District’s requirements.  Both Miller’s engineer and the State Water Commission later confirmed Miller’s work complied with the 1996 directives from the District.  This evidence shows the District intended and believed Miller would act on its directives and that, in fact, Miller did follow the District’s mandate.  The District dismissed Johnston’s 1996 complaint after Miller modified his dikes according to the District’s order and after the District knew Miller’s dikes required a permit but did not have one.  At no time during this process did the District inform or warn Miller that any of his dike work in 1996 required a permit.  At no time was Miller cautioned that following the District’s directive without having a permit could or would result in removal of the dikes.  This satisfies the second element of N.D.C.C. § 31-11-06.

[¶51] Under the facts of this case, I would hold that the District is estopped from returning some 15 years later to claim Miller’s work done at the District’s direction in 1996 required a permit so the dikes must now be removed.  Such a result is contrary to law, defies reason and promotes economic waste.

[¶52] Daniel J. Crothers

FOOTNOTES
1:    
 To the extent the District argues or the majority concludes estoppel is unavailable because the District took no formal action in response to the 1996 complaint, that reason is unavailing.  The District had a complaint pending before it in 1996.  Section 61-16.1-53, N.D.C.C., directed the course of proceedings for resolution of that complaint.  Miller modified his dikes as directed by the District following recommendations by the State Water Commission.  The complaint was ultimately withdrawn as a result of Miller’s dike modifications.  As explained below, that the District directed Miller to modify the dikes without formal action begs the question of estoppel rather than resolves it.